396 So.2d 1251 (1981)
STATE of Louisiana
v.
Reginald P. FONTANA.
No. 66626.
Supreme Court of Louisiana.
April 6, 1981.
*1252 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Sam A. Smith, Asst. Dist. Attys., counsel for plaintiff-appellee.
Paul Henry Kidd, Monroe, counsel for defendant-appellant.
DIXON, Chief Justice.[*]
On February 20, 1978 the defendant was stopped and arrested on a warrant for issuing worthless checks. His car was impounded, and an inventory search disclosed a rubber tourniquet, two cloth armbands, syringes and a bottle containing a white powder later identified as phenmetrazine, a Schedule II controlled dangerous substance. Defendant was charged with knowing and intentional possession of phenmetrazine (R.S. 40:967). Found guilty by the jury, he was sentenced to five years at hard labor, suspended, and placed on five years supervised probation subject to the special conditions that he spend one year in Ouachita Parish jail and report to the Monroe Substance Abuse Clinic.
On appeal, defendant appears with new counsel and presents three assignments of error. He argues that he received ineffective assistance of counsel at trial.[1] He claims that the trial court should have granted his motion for a mistrial after a police deputy testified that he was first arrested on a warrant for issuing worthless checks.[2] Finally, he argues that his conviction should be reversed or the case remanded to permit him to file a motion for a new trial because there is no evidence to prove that he possessed phenmetrazine illegally. Defendant claims that at the time of his arrest he had a valid prescription for Preludin, which is composed mainly of phenmetrazine. We find that the evidence supports the defendant's position and therefore reverse the conviction on this ground, pretermitting discussion of the other two assignments of error.
Defendant filed no motion for acquittal or for new trial. However, this omission no longer precludes review, as it once did, for we have held that a refusal to review an allegation that the state failed to present any evidence of the crime charged (or of an essential element) simply because no such motions have been filed is patently unfair and denies the defendant due process. State v. Boutte, 384 So.2d 773 (La. 1980); State v. Peoples, 383 So.2d 1006 (La. 1980). Moreover, the standard of review set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by this court in recent cases,[3] requires us to determine not whether there is any evidence to support the conviction, but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime proved beyond a reasonable doubt.
An examination of the evidence adduced at trial discloses that the essential element of the crimeillegal possession of the controlled dangerous substancewas not proved. R.S. 40:967(C) states in part:
"It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was *1253 obtained directly, or pursuant to a valid prescription or order from a practitioner..."
It is, therefore, permissible for a person to possess a Schedule II substance if he obtains it "directly, or pursuant to a valid prescription" from a practitioner. In this case two physicians testified that they had prescribed Preludin for the defendant on several occasions. Dr. Henry Jones, Jr. testified that he first saw the defendant on July 18, 1977; he prescribed Preludin on that day and on three other visits to help the defendant control his weight. Dr. Jones testified that phenmetrazine was the major component of Preludin and that he never prescribed phenmetrazine itself to patients. Dr. Henry Roan testified that he prescribed Preludin for the defendant several times, including February 15, 1978, five days before defendant's arrest.[4]
The two pharmacists who testified at trial stated that they knew phenmetrazine only as Preludin. Michael Napoli testified that he filled Preludin prescriptions for the defendant on four different occasions.[5] All the prescriptions were ordered by Dr. Jones and were for thirty 75 mg. tablets, a thirty day supply. Mike Scott testified that his records showed nine Preludin prescriptions had been filled for the defendant.[6] These prescriptions were also for thirty 75 mg. tablets.
Three criminalist experts in the field of chemical analysis of controlled dangerous substances also testified. One stated that the 75 mg. Preludin tablet was a time release pill composed of two layers, an outer pinkish coating of inert ingredients, and a white core of phenmetrazine. He explained that if the tablet was broken and placed in water, the phenmetrazine would dissolve and filter into the water. The pink coating would not dissolve and could be removed. Boiling off the water would then leave as residue the white powder found in the defendant's possession. Another criminalist testified that phenmetrazine was the only drug in Preludin, and that Preludin was the only drug that contained phenmetrazine. A third testified that when he saw phenmetrazine, he presumed that it came from Preludin. He stated that phenmetrazine could probably be manufactured by a clandestine chemist, but he had never seen any clandestine phenmetrazine.
The evidence presented does not establish beyond a reasonable doubt that the defendant possessed phenmetrazine illegally, that is, without a valid prescription. While the defendant may have been separating his properly obtained Preludin into its component parts and using it in manner different from that prescribed by his physicians, R.S. 40:967(C) does not prohibit such activity. The state did not argue or present any evidence at trial that the defendant used misrepresentation, fraud, deception or subterfuge to obtain the prescriptions. It did not allege that the defendant forged the prescriptions.[7]
Since the evidence assembled by the state does not prove the offense charged, *1254 the verdict must be overturned and the conviction reversed. Because the reversal is based on the failure of the evidence to prove an essential element of the crime charged, the double jeopardy clause of the Fifth Amendment bars a second trial of the defendant, and he must be discharged. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
The conviction is reversed, the case is dismissed, and the defendant is ordered discharged.
BOUTALL, J. ad hoc, dissents with reasons.
BOUTALL, Justice ad hoc, dissenting.
The decision in this case is based upon weighing the evidence presented by the state against the defense that the substance was obtained by prescription. The jury as a finder of fact is entitled to make a credibility evaluation. Under Louisiana Constitution of 1974, Art. 5 § 5(B) the appellate jurisdiction of the Supreme Court in criminal cases extends only to questions of law. We should not ignore this limitation under the aegis of Jackson v. Virginia.
NOTES
[*] Judges James C. Gulotta, John C. Boutall and Patrick M. Schott of the Fourth Circuit participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.
[1] Defendant's first counsel did not file any pretrial motions, to suppress the evidence, to quash the indictment, or for a preliminary examination or bill of particulars. He also failed to file a motion for a new trial.
[2] The trial judge admonished the jury to disregard the remark. Defendant believes that the admonition did not correct the prejudicial effect of the remark. He argues that the jury may have concluded that he forged the prescriptions when they heard that he was wanted for issuing worthless checks. He also claims that he was really being tried for illegal use of a controlled dangerous substance and that the implication of moral turpitude prejudiced his case.
[3] See State v. Harveston, 389 So.2d 63 (La. 1980); State v. Guillot, 389 So.2d 68 (La.1980); State v. Morgan, 389 So.2d 364 (La.1980).
[4] He also prescribed Preludin on January 3, 1978, March 21, 1978, June 14, 1978, July 19, 1978, August 28, 1978, September 20, 1978 and October 10, 1978.
[5] July 18, 1977, August 15, 1977, October 5, 1977 and March 30, 1978.
[6] Three prescriptions were written by a Dr. Roger Sharp and filled on November 1, 1976, August 4, 1977 and September 1, 1977. Six were written by Dr. Roan and filled November 1, 1977, May 3, 1978, July 19, 1978, August 28, 1978, September 20, 1978 and October 10, 1978.
[7] R.S. 40:971(B)(1) states in part:

"It shall be unlawful for any person knowingly or intentionally:
. . . . .
(b) To acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge; or
. . . . .
(e) To alter any controlled dangerous substance obtained by prescription without prior approval of the department;
. . . . .
(g) To obtain or attempt to obtain a prescription or prescription blank form from a doctor, dentist, or veterinarian for a controlled dangerous substance and/or legend drug by fraud, theft, misrepresentation, deception or subterfuge."