411 So.2d 1050 (1982)
STATE of Louisiana
v.
Joseph N. SHERER.
No. 81-KA-1462.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 16, 1982.
*1051 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Sturgeon, Dist. Atty., Glenn Gremillion, Ronald J. Kilgarlin, Asst. Dist. Attys., for plaintiff-appellee.
Philip A. LeTard, Vidalia, for defendant-appellant.
*1052 BOUTALL, Justice Ad Hoc.[1]
Joseph N. Sherer was convicted and sentenced on two counts of the crime of negligent homicide, LRS 14:32. Subsequently, he was charged and sentenced under the Habitual Offender Law, LRS 15:529.1. He appeals both his conviction and sentence.
The record shows that in the early morning hours of June 16, 1976, Joseph N. Sherer was driving his truck on Highway 84 near Ferriday, Louisiana, when he crossed the center line of the highway and crashed headon into a vehicle being driven in the opposite direction by Mrs. Eloise Killingsworth. Both Mrs. Killingsworth and her passenger, Wanda Sue Burnham, were killed in the accident. Sherer was subsequently charged with two counts of negligent homicide and convicted by a six-man jury. His convictions were affirmed by this court, State v. Sherer, 354 So.2d 1038 (La. 1978). While serving his term of imprisonment, Sherer applied for and received a new trial on the basis of the holding in Brown v. Louisiana, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980). In that case, the United States Supreme Court retroactively applied the holding in Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), which held that a five to one verdict convicting a defendant of a non-petty offense violated the constitutional guarantee of jury trial. The new trial was held in December, 1980, and ended with a unanimous jury verdict on both counts of negligent homicide. The trial judge sentenced Sherer to serve five years at hard labor on each count, the sentences to run consecutively. The state then filed a bill of information charging Sherer as an habitual offender with two prior felony convictions. The judge then pronounced sentence on the habitual offender bill ordering Sherer's confinement for five additional years on each count to run consecutively with each of the other two sentences, making a total of twenty consecutive years. Sherer has appealed asserting nine assignments of error.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in failing to suppress the results of the blood alcohol test pursuant to his motion to suppress. He contends that the requirements of LRS 32:661 were not met in that he was not under arrest at the time of the test, that he had not consented to the test, and that being in Mississippi at the time, the Louisiana State Trooper had no authority to order the taking of the blood, and that the blood sample was not properly handled.
A similar contention was made in the appeal from the defendant's first trial, State v. Sherer, 354 So.2d 1038 (La.1978). We perceive nothing in the record before us which would change the basic facts and legal principles enunciated in that decision. We reiterate that the facts show that the defendant was arrested within the scope of the statute, that he was rendered unconscious at the time of the accident and remained unconscious at the hospital, a condition rendering him incapable of refusal to submit to the blood test and accordingly not having withdrawn the implied consent statutorily provided in LRS 32:661(B). It would be a miscarriage of justice indeed, if the act of mercy in having the injured defendant brought to a nearby hospital in Mississippi in an effort to preserve his life could be the basis for suppressing the evidence of the blood test. The evidence shows the blood sample was taken in accordance with Louisiana procedures and the motion to suppress was properly refused. Although the prior Sherer case was not on a motion to suppress, the same principles apply. We find no error in this assignment.

ASSIGNMENT OF ERROR NO. 2
Defendant asserts that the trial court erred in failing to grant his motion to quash the indictment based on the unconstitutionality of the Louisiana Negligent Homicide Statute, LRS 14:32. He contends that he *1053 has been denied his Fourteenth Amendment right to due process of law because the statute creates an unconstitutional criminal presumption that the violation of a statute or ordinance causes him to be presumed criminally negligent, thus allowing the state to secure a conviction without proving every element of the crime beyond a reasonable doubt as required under the principles announced by the United States Supreme Court in the case of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
The pertinent part of LRS 14:32 provides:
"Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence."
Defendant refers us to the decision of the United States District Court, Western District of Louisiana, in the case entitled Hammontree v. Phelps, 462 F.Supp. 366 (W.D. La.1978), and urges that we should adopt the opinion of the trial judge holding that this provision violated due process because it created an unconstitutional presumption that violation of a statute constitutes criminal negligence. However, we point out that that decision has been reversed on appeal in the case of Hammontree v. Phelps, 605 F.2d 1371 (U.S.App. 5th Cir. 1979). The Louisiana Supreme Court had previously rendered a decision, State v. Hammontree, 363 So.2d 1364 (La.1978), in which this court clarified the construction to be placed on the statute. We quote at page 1372:
"The better interpretation of `presumptive evidence' in R.S. 14:32 is that it creates no legal presumption, but means that the violation of a statute related to the cause of the accident will justify the inference that defendant committed a criminally negligent act. To constitute `criminal negligence,' the offender's conduct must be a gross deviation below the standard expected of a reasonably careful man. R.S. 14:12. Reasonably careful men are expected to obey safety laws, and it is within the province of the legislature to permit the inference that one who violates a safety law and thereby injures another is guilty of criminal negligence; and if it is proved beyond a reasonable doubt that the criminal negligence was the cause of death, the perpetrator may be guilty of criminal homicide."
Relying upon this definition, the Fifth Circuit concluded that the statute did not shift any constitutional burden from the prosecution to the defendant and reverse the finding of unconstitutionality of the District Court. Similarly, we believe our interpretation of presumptive evidence contained in Hammontree is constitutionally correct and reiterate it in this case. Accordingly, we find that LRS 14:32 is not in violation of either the Louisiana or United States constitution.
In the alternative under this assignment of error, defendant argues that the manner in which the state was allowed to introduce evidence concerning levels of intoxication denied him his Fourteenth Amendment right to due process of law. The defendant argues that the state was allowed to show that a person with a .27% of alcohol in his blood was far above the percentage needed for a conviction of driving while intoxicated, and reasons that this led to a presumption by the jury that the defendant must be guilty of criminal negligence, a fact which was not proved beyond a reasonable doubt.
The state presented experts to testify that the defendant's blood did contain .27% by weight of alcohol, and that a person would be unable to operate machinery when the alcohol in his blood was much lower. Additionally, the state introduced testimony of the eye witnesses to the accident as well as the investigating officer and others, all of which tended to establish that the defendant was clearly guilty of criminal negligence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
This assignment is directed to a state trooper being allowed to testify how the *1054 accident occurred, the trooper not having been presented as a reconstruction of accident expert and not having first hand knowledge of how the accident occurred.
The state examined the trooper, Johnny Blunschi, and established his qualifications as an expert witness; however, he was not formally tendered nor accepted as an expert in accident reconstruction. The evidence showed that Trooper Blunschi had been employed for nine years by the Louisiana State Police. He had completed the State Police Training Academy and received a certificate in Traffic Police Administration from Northwestern University in Chicago. Since 1972, he had been instructing accident investigation and reconstruction at the State Police Academy in Baton Rouge. Before becoming a member of the State Police, he had obtained the equivalent of an associate degree in law enforcement from Memphis State University. Prior to this trial, he had testified on two occasions as an expert in accident reconstruction, and had testified on numerous occasions as a factual witness.
During the trooper's examination, the defense did not object until the State asked the witness how the vehicle involved in the accident could have gotten into a certain position. When defense counsel objected on the basis that the witness was not qualified to answer the question, the court overruled the objection.
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert, his competency must have been established to the satisfaction of the court, LRS 15:466. This court has consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Walker, 394 So.2d 1181 (La.1981); State v. Drew, 360 So.2d 500 (La.1978); State v. Lewis, 353 So.2d 703 (La.1977). The record discloses that the officer possessed sufficient education and practical experience as an expert in accident reconstruction. Moreover, he had previously qualified as an expert in accident reconstruction in the District Courts of this state. Although the trial judge did not formally accept the officer as an expert, it appears by his rulings that he considered him as such. It does not appear that he abused his discretion in doing so.
We find no error in this assignment.

ASSIGNMENT OF ERROR NO. 4
This assignment is based on the court's refusal to grant defendant's motion for a mistrial based on the fact that the defense requested that all of the witnesses be warned against making any statements concerning a prior trial. The arresting officer, Trooper Farris, on cross-examination stated that he had testified in the previous trial. It is contended that this statement was not responsive to the question asked and it was prejudicial. We hold that it was responsive and not prejudicial.
The question and answer came about in a sequence of questions in which defense counsel was asking the trooper about the handling of the blood sample. Trooper Farris had testified that Trooper Blunschi had picked up the sample the day before or the day that he left for Baton Rouge whereupon the following exchange took place:
"Q: Would it be safe to say that it was two or three days after the accident?
A: I really couldn't tell you exactly how far ... how long it was.
Q: Have you ever ... have you ever made the statement under oath concerning these events? Have you ever done that before in this accident?
A: Yes. In a previous trial on it.
Q: Your Honor, could we remove the jury?"
The defense then moved for a mistrial which the court overruled on the basis that it was a solicited remark on the part of defense counsel. We agree. We further *1055 note that the defendant did not request an admonition to the jury and now cannot complain of any prejudice resulting from its omission. See State v. Baldwin, 388 So.2d 664 (La.1980).
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
This assignment if based on failure to exclude Dr. Metcalf's testimony referring to the odor of alcohol in the fluid extracted from the defendant's stomach shortly after the accident.
Dr. Metcalf was the defendant's attending physician when he was brought to the hospital in Mississippi, and testified at the first trial of this defendant, but died prior to this second trial. At this trial, the defendant did not object to the introduction of the transcript of Dr. Metcalf's testimony from the first trial but he did object to a portion of the testimony which involved the odor of the fluid taken from defendant's stomach. Defendant argues that no foundation was laid concerning the doctor's ability to make a proper determination as to the "strong odor of alcohol" in the fluid, contending that the remark was highly prejudicial and should not have been introduced to the jury because he could not cross examine Dr. Metcalf at the second trial.
We point out that there was no objection to this testimony at the first trial and that Dr. Metcalf had been qualified as an expert in the field of medicine. Thereafter, the following took place:
"Q: When you put this tube in the stomach, did you draw any fluid out of the stomach?
A: Yes, it was pretty strong.
Q: Pretty strong, how do you mean pretty strong?
A: It had an odor of alcohol."
Certainly the physician could testify as to what the odor he perceived smelled like, and we see no reason why this testimony should be declared inadmissable. We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 6
This assignment of error is based upon the court allowing evidence to be submitted concerning an incident which occurred approximately half a mile from the Frogmore Gin, the area of the accident. It is contended that the evidence is irrelevant and too remote to have evidentiary value.
The objected to testimony is that of Glenn Green, Jr., who testified that he was driving the highway in question and noticed a two-tone green truck with a diamond-cut type camper shell weaving on the highway heading in the direction of Ferriday, Louisiana. The vehicle sometimes wandered into the left lane, and in one instance forced a large truck to pull onto the shoulder of the road. It also ran off the right side of the road into a ditch hitting a traffic sign. This incident occurred approximately a half of a mile from the area of the accident shortly before the accident happened. Green passed the vehicle and proceeded to his destination and as he was returning home, he noticed the accident in question. Green testified that he recognized the green truck as the one that he had seen a short time before on the same highway.
To bolster this testimony, the state introduced the testimony of Jerome Harrison, an expert in the field of paint comparisons, who compared the paint on a piece of metal off the defendant's truck with paint scrapings taken from the highway sign that he allegedly struck. His analysis found both paints to be microscopically and chemically similar. However, he admitted that he could not say that the samples of paint were identical.
We are of the opinion that the evidence elicited was sufficiently related to the crime charged to allow the judge to permit it into evidence. Obviously, the evidence standing by itself is not conclusive, but there is sufficient probative value to permit the jury to consider it in its determination of the guilt or innocence of the accused. We point out that this, of course, was not the sole evidence upon which the state's case was based. The state produced eye witnesses as *1056 well as expert testimony demonstrating overwhelming evidence of the defendant's guilt.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7
This assignment of error concerns the Assistant District Attorney's statement that drunkenness was gross negligence and that this gross negligence resulted in the deaths of Mrs. Eloise Killingsworth and Wanda Sue Burnham. The defendant contends that this statement is misleading in that it leads the jury to believe that once intoxication is proved, then this fact must lead to the conclusion that the deaths were caused by this gross negligence.
During his closing argument, the prosecutor made the following statement:
"We proved that Joe Sherer was drunk.... Drunkeness in this case ... his drunkenness was gross negligence. A gross deviation below the standard of care practiced by reasonable people. And that gross negligence resulted in the death of Mrs. Eloise Killingsworth and Wanda Sue Burnham. That was proved."
This statement was made in the context that the prosecutor was informing the jury of what he believed the state had proved in the case. The defendant did not object to the prosecutor's statement at the trial; therefore, he cannot argue that impropriety for the first time on appeal. State v. Hicks, 395 So.2d 790, 797 (La.1981); La.C.Cr.P. Art. 841. The facts of this case do not present a case where a prosecutor's prejudicial comments in closing argument may be considered to violate Federal due process even in the absence of a defense challenge or objection at trial. The prosecutor was merely stating the evidence and argument as to what that evidence proved. The trial judge later read the jury the law on criminal negligence and explained it to them. Even if there may have been some confusion in the minds of the jury, the trial judge more than adequately explained the law in his instructions.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 8
This assignment of error is based upon the judge's sentencing of the defendant to a twenty year term by his treatment of two counts of negligent homicide as separate acts as the basis for increasing his sentence as an habitual offender.
At the sentencing hearing, the judge sentenced Sherer to "be confined to the Department of Corrections for service at hard labor for five years on each count, to run consecutively." The District Attorney then filed a bill of information charging Sherer as a multiple offender with two prior felonies under the provisions of the Habitual Offender Law, LRS 15:529.1. After being assured that the defendant understood his rights, the judge stated:
"The sentence of the Court on the multiple bill is to be confined to the Department of Corrections for service of five years on each count to run consecutive... to run consecutively with each of the other two sentences, making a total of 20 consecutive years."
Thereupon the judge signed a judgment sentencing Sherer "to serve a term of imprisonment at hard labor in the Louisiana Department of Corrections for a period of TWENTY (20) years."
We conclude there is error in this sentence. The effect of the sentencing procedure followed by the trial judge was to impose upon the defendant the maximum sentence of five years on each count of the negligent homicide conviction and then add to each count an additional five years under the Habitual Offender Law, thus giving twice the longest possible sentence, ten years on each count. LRS 15:529.1(D) does not permit the sentence to be imposed in that fashion. We quote in pertinent part:
"If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he had been convicted, the court shall sentence him to the punishment *1057 prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated."
Accordingly, the judge should have vacated the sentence already imposed on the conviction and sentenced the defendant only under the habitual offender bill.
The sentence imposed is in further error because the judge sentenced the defendant as an habitual offender on each of the two counts. In State v. Schamburge, 344 So.2d 997 (La.1977), and in State ex rel. James Henry Jackson v. Henderson, 283 So.2d 210 (La.1973), this court held that convictions on more than one count entered on the same date should be treated as one conviction for applying the habitual offender statute. In State v. Chapman, 367 So.2d 808 (La.1979), we approved the action of the trial judge who refused to consider both counts of a two-count indictment as requiring the defendant be adjudged a triple offender, and instead used only the first count in adjudging the defendant as a second offender and sentenced as such. At the same time he sentenced the defendant on the conviction of the other count of the crime charged. By sentencing in that manner, the trial judge applied properly the principle that more than one count entered on the same day should be treated as one conviction. Similarly, in the present case, the application of that principle requires that only one of the two counts of this conviction could be used in the sentencing of the defendant under a habitual offender bill. The habitual offender bill on the other count should have been rejected and the defendant's sentence on the conviction of the other count of negligent homicide could be imposed.
Because the habitual offender bill does not set out with clarity which count of the negligent homicide charge constitutes which count of the habitual offender bill, we are unable to affirm one count and reverse the other. We must set aside the adjudgment and the sentence on each count and remand this matter to the trial court for further proceedings in accordance with the views expressed above.

ASSIGNMENT OF ERROR NO. 9
By this assignment of error the defendant asserts that the record fails to prove each element of the crime beyond a reasonable doubt, apparently referring us to State v. Williams, 354 So.2d 152 (La.1977). In short, he argues that no one testified that any act by the defendant caused the accident.
Most of the defendant's argument is addressed to the proof of a particular fact, not to proof of an element of the crime. As we pointed out in Williams, our criminal appellate jurisdiction does not extend to questions of fact, only to questions of law. Nevertheless his assignment of error is fundamentally based on the allegation that the state failed to present any evidence of any essential element of the crime charged and we are bound to review the record. See State v. Fontana, 396 So.2d 1251 (La.1981). In Fontana this court reiterated its adoption of the standard of review set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Under that standard or any other of similar view, the evidence is overwhelming as to defendant's criminal negligence. This was demonstrated by the evidence of eye witnesses, the investigating officers, expert evidence and physical facts, a considerable portion of which we have referred to in other assignments of error. This defendant clearly drove his vehicle across the highway into the traffic lane at a high rate of speed, crashing head-on into a vehicle approaching in that lane. Additionally, his blood contained an amount of alcohol far beyond the limit at which expert testimony showed machinery could not be operated.
This assignment has no merit.

DECREE
For the reasons assigned, the convictions and sentences on the two counts of negligent homicide are affirmed;
*1058 The adjudgments and sentences on the two habitual offender counts are vacated and set aside and we remand the proceedings under LRS 15:529.1 to the trial court for such further proceedings as may be instituted in accordance with law and consistent with the principles expressed herein.
AFFIRMED IN PART; VACATED, SET ASIDE AND REMANDED IN PART.
LEMMON, Justice, concurring in denial of defendant's application for rehearing.
The second paragraph of R.S. 14:32 contains a presumption which unconstitutionally shifts the burden of proof to defendant to prove his innocence of criminal negligence. See my concurring opinion in State v. Lollar, 389 So.2d 1315 (La.1980), which interpreted an identical provision in R.S. 14:39.
In this case, however, the trial judge did not include the second paragraph of R.S. 14:32 in his instructions to the jury, and the unconstitutional presumption in the statute therefore did not prejudice this defendant.
NOTES
[1] Judges John C. Boutall of the Court of Appeal, Fourth Circuit, and O. E. Price and Fred W. Jones, Jr., of the Court of Appeal, Second Circuit, participating in this decision as Associate Judges Ad Hoc, joined by Justices Calogero, Marcus, Dennis and Watson.