433 So.2d 230 (1983)
STATE of Louisiana
v.
Malcolm R. GOMEZ.
No. 82 KA 0918.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied July 5, 1983.
*232 Margaret A. Coon, Asst. Dist. Atty., Covington, for appellee.
James A. McPherson, New Orleans, for appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
Malcolm R. Gomez was charged in a grand jury indictment with fifteen counts of theft (La.R.S. 14:67), two counts of receiving stolen things (La.R.S. 14:69), one count of injuring public records (La.R.S. 14:132), and one count of filing false public records (La.R.S. 14:133), which offenses allegedly occurred during the period of January 1, 1979 through June 1, 1981, in St. Tammany Parish, Louisiana. After a trial by jury, he was convicted of ten counts of theft, one count of unauthorized use of a movable and one count of injuring public records.
The specific charges, jury verdicts and sentences are as follows:
Count Itheft of a tractor valued at $5,746.18 belonging to the St. Tammany Parish School Board (Board); guilty; sentenced to serve 2½ years in the parish jail and pay a fine of $3,000, and in default of payment of the fine, an additional period of imprisonment of 9 months in the parish jail.[1]
Count IIreceiving a stolen tractor valued at $5,746.18 belonging to the Board; not guilty.
Count IIItheft of a cafeteria table valued at $367.25 belonging to the Board; guilty; imprisonment in the parish jail for 1 year and a fine of $1,000 and in default of payment of the fine, an additional 6 months confinement.
Count IVreceiving a stolen cafeteria table valued at $367.25 belonging to the Board; not guilty.

*233 Count Vtheft of a copier valued at more than $500 belonging to the Board; guilty of unauthorized use of a movable (La.R.S. 14:68); 3 months in the parish jail and a fine of $500 and in default of payment of the fine, an additional 3 months confinement.
Count VItheft of a typewriter valued at $450 belonging to the Board; not guilty.
Count VIItheft of food and preparation costs valued at more than $500 belonging to the Board; guilty of theft of property valued at $500; 2½ years in the parish jail and a fine of $3000 and in default of payment of the fine, an additional 9 months of confinement.
Count VIIItheft of cash belonging to the Board by four checks payable to W.E. McDermott totaling $2,567.25; not guilty.
Count IXtheft of cash belonging to the Board by a check payable to Robert C. Ware for $2,241.80; guilty; 2½ years in the parish jail and a fine of $3000 and in default of payment of the fine, an additional 9 months confinement.
Count Xtheft of cash belonging to the Board by a check payable to Boyet Junior High School for $1,352.42; guilty; 2½ years in the parish jail and a fine of $3000 and in default of payment of the fine, an additional 9 months confinement.
Count XItheft of cash belonging to the Board by check payable to Fred Hoopson for $960; not guilty.
Count XIItheft of cash belonging to the Board by check payable to cash for $625; not guilty.
Count XIIIinjuring public records of the Boyet Junior High School by removing and concealing the school ledgers, checkbooks, canceled checks and invoices for the 1979-80 school years; guilty; 9 months in the parish jail and a fine of $1,500 and in default of payment of the fine, an additional 9 months of confinement.
Count XIVtheft of cash belonging to Fire Protection District No. 1 of St. Tammany Parish (District) by check payable to Slidell Truck Sales for $5,500; guilty; 2½ years confinement in the parish jail and a fine of $3000 and in default of payment of the fine, an additional 9 months confinement.
Count XVtheft of cash belonging to the District by check payable to Burns, Farmer and LeGardeur for $3,472.78; guilty; 2½ years confinement in the parish jail and a fine of $3000 and in default of payment of the fine, an additional 9 months confinement.
Count XVItheft of cash belonging to the District by check payable to John R. Tarver for $495; guilty; 1 year confinement in the parish jail and a fine of $1,000 and in default of payment of the fine, an additional 6 months confinement.
Count XVIItheft of cash belonging to the District by three checks payable to Onsite Testing Company, Inc. totaling $11,900; guilty; 2½ years confinement in the parish jail and a fine of $3000 and in default of payment of the fine, an additional 9 months confinement.
Count XVIIItheft of cash belonging to the District by three checks payable to C.H. Wrinkle and one check to Materials, Inc. totaling $7,120; not guilty.
Count XIXfiling false public records with the District and the Louisiana Parochial Retirement System; not guilty.
The trial judge specified that all primary jail terms would run concurrently and that the total fine was $10,000.[2] The trial judge also specified that all additional jail terms for failure to pay fines were to run consecutively to each other and consecutively to all primary jail terms and would start immediately after completion of the longest primary *234 term. The cumulative result of these sentences is a primary term of 2½ years confinement in the parish jail and a fine of $10,000 and in default of payment of the fine, an additional period of confinement in the parish jail of 87 months (7 years and 3 months).

CROSS-EXAMINATION AND IMPEACHMENT[3]
The state called Robert C. Wear to testify concerning the charge of theft of $2,241.80 contained in Count IX of the indictment. During direct examination, Wear testified as follows:
Q Mr. Wear, you're presently on Federal probation, is that correct, sir?
A That's correct.
Q What for, sir?
A Fraud.
Q You were convicted of fraud?
A Yes, I was.
Q And you were sentenced to what?
A Three years, four months. Six months incarceration and the remainder of the time probation.
Q And in what jurisdiction were you convicted, sir?
A Federal in Washington, D.C.
Q Did that conviction have anything to do with any enterprises or activities that you might have been involved in in Louisiana?
A No, none at all.
During cross-examination, the following exchange took place:
Q You're on probation?
A Yes, I am.
Q You don't want to go back to jail, do you?
A No. I don't want to go back to jail. That's why I'm telling the truth.
Q You didn't like it, did you?
A No.
Q You would do almost anything to keep from going back to jail?
A Yes.
MR. ALFORD:
Your Honor, I object.
EXAMINATION BY MR. McPHERSON:
Q You know if you don't make the prosecutors happy
MR. ALFORD:
Your Honor I'm going to object
MR. McPHERSON:
There's a good chance you go back to jail, isn't there?
MR. ALFORD:
Your Honor, I absolutely object to that.
THE COURT:
I want to hear the whole question.
MR. McPHERSON:
You know if you don't make the prosecutors happy, there's a good chance you go back to jail, isn't there?
THE COURT:
I will sustain that.
THE WITNESS:
Can I answer that?
MR. ALFORD:
No.
EXAMINATION BY MR. McPHERSON:
Q You know Mackie Gomez, don't you?
A Yes, I do.
Q Did you discuss your testimony with the prosecutor today?
A Yes, I have.
MR. McPHERSON:
I have no further questions. Thank you, sir.
(Emphasis added).
The defendant contends that the trial judge committed error by sustaining the state's objection and improperly limited his right of cross-examination.
In State v. Brady, 381 So.2d 819, 822 (La.1980), appears the following:
The right to cross-examine witnesses concerning their interest in a case is not only a statutory right, it is a right protected by the Sixth Amendment to the United States Constitution and Article I, Section 16 of the Louisiana Constitution. The United States Supreme Court stated in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) that the right *235 of cross-examination is included in the right of an accused to confront witnesses against him. See also Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The Louisiana Constitution explicitly guarantees defendants the right of cross-examination: "An accused is entitled to confront and cross-examine the witnesses against him...." Louisiana Constitution, Article I, Section 16. Under both constitutions the exposure of a witness' motivation in testifying is a proper right of cross-examination. See, Davis v. Alaska, 415 U.S. at 316, 94 S.Ct. at 1110; Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400 [1413], 3 L.Ed.2d 1377 (1959).
In particular, La.R.S. 15:492 provides as follows:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
The defendant contends that the cases of Brady, State v. Robinson, 337 So.2d 1168 (La.1976) and State v. Senegal, 316 So.2d 124 (La.1975) are controlling. We find these cases factually distinguishable from the instant case. In Brady, the defense counsel attempted to cross-examine the victim of the alleged crime about whether he had "made a deal with the D.A." concerning a previous arrest for carrying a concealed weapon pending with the District Attorney in return for his testimony. The court ruled that the trial court committed error by not allowing the cross-examination because it might tend to show that the District Attorney's office had leverage over the witness as a result of the pending charge. In Robinson, the trial court allowed the state to cross-examine a defense witness about the fact that she was arrested for the same crime as the defendant to show that she had an interest in a verdict in favor of the defendant. In Senegal, the trial court refused to allow the defendant to question the witness concerning any bias or interest that he had in serving as an undercover narcotics agent which might influence his perceptions or color his testimony and this was found to be error. There is no evidence in the record to indicate that Wear had any charges pending against him in St. Tammany Parish at the time of the trial. There is no evidence to show that Wear was arrested or charged with any of the same offenses as the defendant. The trial judge in this case did not issue a blanket order precluding the defendant from cross-examining Wear about bias or prejudice, he only sustained an objection to a specific question.
The trial court properly sustained the state's objection because the question propounded was inaccurate and misleading. The question implied that the prosecutor in St. Tammany Parish had leverage or control over the federal probation in Washington D.C., and this is not legally accurate. 18 U.S.C. §§ 3651, et seq.; Rule 32.1, Federal Rules of Criminal Procedure. The question suggested that not making the prosecutors "happy" was a basis for the witness to go to jail, but did not state how or why. The trial court's ruling did not preclude counsel for the defendant from examining the witness about any agreements with the District Attorney's office or about any charges or potential charges which might be pending in St. Tammany Parish.
This assignment of error is without merit.

OTHER CRIMES EVIDENCE[4]
During the trial, the state called Joseph A. Marchand, Sr., the chairman of the Board of the Fire Protection District No. 1, as a witness. He testified on direct examination, in part, as follows:
Q During the period of your service with Fire Protection District Number 1, did Malcolm Gomez have any connection with the Fire Protection District?

*236 A Yes, sir.
Q What was his connection?
A He was a commissioner, secretary-treasurer and also superintendent.
Q As of 1980, the beginning of 1980, was Mr. Gomez being paid a salary?
A 1980?
Q Yes.
A Yes, sir.
Q Do you know how much he was being paid?
A I was assuming it was in the neighborhood of three hundred and fifty dollars, but I wasn't sure.
Q Was this a month or every two weeks?
A Everyone was supposed to have been paid by the month.
Q Did there come a time that you determined he was being paid more than that?
A Yes, sir.
Q And how much did you determine that he was being paid?
A It varied in wages at different times. He started out at one amount and went on up to, I think, in the neighborhood of seven hundred, seven hundred and fifty a month, something like that.
Q And were you familiar with the fact that a lady by the name of Magee was on the payroll of Fire Protection District Number 1?
A No, sir.
Q When did you find out that she was on the payroll?
A In the early part of 1980.
Q And how much was she getting paid?
A Her salary also varied from one to the other. She started out, I think, in the salary range of something likeI don't know if it was a hundred dollars or two hundred dollars a month, something like that.
Q And what did it end up at? Do you know?
A Somewhere in the neighborhood I would say of four hundred, four hundred and fifty dollars a month.
Q And this is the lady who later became Mr. Gomez' wife?
A I understand, yes, sir. I'm not familiar with the lady. I don't know the lady herself. I've never met her.
On cross-examination, Marchand gave the following additional testimony:
Q And Mr. Gomez took over Mr. Champagne's job?
A Yes, sir.
Q Mr. Champagne was paid, wasn't he?
A Yes, sir.
Q And then you can only naturally assume that Mr. Gomez would be paid too, wouldn't you?
A I was assuming Mr. Gomez was being paid the same salary as Mr. Champagne.
Q Would you assume he would be paid that same salary forever? Wouldn't you anticipate he would get a raise some time?
A I would think that if there were a raise, he would come to the board for a raise.
After Marchand completed his testimony and was excused, the state rested its case subject to rebuttal. At this time, counsel for the defendant secured a hearing out of the presence of the jury and made a motion for "the dismissal of the indictment" asserting that the testimony of Marchand violated the rule and notice requirements of State v. Prieur, 277 So.2d 126 (La.1973) and its progeny. Counsel for the defendant asserted that Marchand's testimony indicated that Gomez and his wife had secret payrolls, were being paid without the Board's knowledge and that such conduct was criminal under Louisiana law. The trial judge denied the motion.
The record reveals that no contemporaneous objection was made to the testimony. Not only did counsel for the defendant fail to timely object, but also cross-examined the witness concerning the salaries. The objection was not raised until after the *237 witness was excused and the state rested its case. Errors not complained of at the time of occurrence are waived. La.C.Cr.P. art. 841; State v. Thomas, 427 So.2d 428 (La. 1983).
This assignment of error is without merit.

JUROR MISCONDUCT[5]
On April 20, 1982, at approximately 1:20 P.M., when the jury was returning to the courtroom after lunch, one of the jurors, Mrs. Anna M. Pons, was observed talking to several bystanders in the courthouse. This was brought to the attention of counsel for the defendant who requested a hearing to determine if there was an appropriate ground for a mistrial. La.C.Cr.P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct outside the courtroom makes it impossible for the defendant to obtain a fair trial.
At the hearing, Jay Meisel testified that on April 20, 1982, after lunch, he saw three or four women talking in the courthouse and it sounded as though there was a conversation about the trial. He could not say what was discussed and did not take note of who the individuals were.
Robert Munster, the bailiff, noted that the juror, Mrs. Pons, was not with the rest of the jurors when they returned from lunch. He started looking for her and observed her in a conversation with some persons in the downstairs lobby of the courthouse. He did not know who the individuals were and motioned to Mrs. Pons to come to court, which she did.
The defendant testified that he and his brothers, Bernard and Arthur, saw the jurors coming back into the courthouse from lunch. He observed Mrs. Pons go over to three ladies. The group asked Mrs. Pons what she was doing there and she replied "I'm here on the Gomez case." Gomez thought he heard some discussion about sailing and observed Mrs. Pons go upstairs when the bailiff motioned to her. Bernard Gomez's testimony was substantially the same as the defendant's.
Marie Griffin, an employee of the clerk of court's office, observed Mrs. Pons coming up the stairs. She heard Mrs. Pons say "I was just talking to Paulette"indicating Paulette Cordes.
Brunette Simmons, an abstracter, testified that she spoke to Mrs. Pons when she was returning from lunch. They did not discuss the Gomez case. On a previous occasion, she saw Mrs. Pons who indicated that she could not talk because she was on the jury.
Arthur Gomez testified that he observed Mrs. Pons talking to a group of ladies and heard her say "Oh, I'm still on the Gomez case. It's a big waste of time." That was all that he heard her say.
Paulette M. Cordes, an abstracter, was one of the persons Mrs. Pons spoke to. She asked Mrs. Pons if she was still on jury duty and Mrs. Pons replied that she was. She then talked about sailing with Mrs. Pons. She did not recall a statement about a "waste of time."
After hearing this testimony, the trial judge denied the motion for a mistrial with the following statement:
The Court is going to deny the motion after listening to all the testimony of everyone within earshot of the incident. The Court finds that all statements were made in absolute and total innocence. There's no evidence that there's been any attitude reached by this juror yet other than from Mr. Gomez' brother Arthur who testified earlier this morning. The last witness stated that the inflection that was placed in her voice, she did not know that she was doing it. So the Court at this time is going to deny that motion and proceed with the trial with the jury in tact. The Court finds that any statements made during the minute or two minutes that the juror was with the people in the lobby were totally innocent and far removed from any conversation of this trial.
The defendant subsequently filed a motion for a new trial asserting, in part, that *238 prejudicial error was committed when the court refused to remove Mrs. Pons from the jury and alleged newly discovered evidence on this issue by way of the testimony of Diane Eschelman. A hearing was held on this motion. Diane Eschelman testified that she was a minute clerk in the clerk of court's office and saw Mrs. Pons talking to Brunette Simmons and Paulette Cordes on the day in question. She went up to the group and said hello. Mrs. Pons was saying a limerick that ended with the "F" word. The limerick was about the defendant, but his name was not used. The limerick poked fun at the defendant and was off-color. Eschelman could not remember the specific words of the limerick. Eschelman heard Brunette Simmons tell Mrs. Pons that she should not be saying that while the trial was going on. Eschelman did not know if anything else was said about Gomez by Pons and did not know if there was any discussion of the case. Eschelman could not say that Mrs. Pons was prejudiced against Gomez.
Brunette Simmons was again called to testify and indicated that she did not remember seeing Diane Eschelman. She did recall that Paulette Cordes was present. She did not recall any conversation about sailing, but indicated that something about sailing could have been said. Simmons testified that Mrs. Pons told a joke about Adam and Eve, but the joke did not have the "F" word in it. The essence of the conversation was an off-color joke and "chitchat." Simmons did not recall any statement by Mrs. Pons about Gomez.
Paulette Cordes was again called to testify and indicated that she did not remember Diane Eschelman being present. She remembered discussing sailing and a joke, but did not recall what the joke was about. She asked Mrs. Pons if that thing is still going on and Mrs. Pons replied "Yes."
Marie Griffin was again called to testify and indicated that she was a criminal minute clerk. She did not hear anything said by Mrs. Pons who was coming up the stairs behind her. She observed Brunette Simmons and Paulette Cordes at that time, but did not recall seeing Diane Eschelman.
After hearing this additional testimony, the trial judge denied the motion for a new trial.
Since this is not a capital case, there was no requirement that the jury be sequestered throughout the trial, and it was not. La.C. Cr.P. art. 791. The conversation between Mrs. Pons and the other ladies took place while testimony was still being taken and was before the judge's charge to the jury. Since the jury was not sequestered at the time of the conversation, Mrs. Pons could lawfully enter into conversations with other persons, provided those conversations did not involve a discussion of the case or impugn her ability to give the defendant a fair trial.
It is implicit from the trial judge's ruling that he resolved the conflicts in the testimony in favor of the state. The trial judge is accorded considerable latitude in evaluating the testimony of witnesses essential to rulings of law and these factual determinations will not be disturbed in the absence of a clear showing of abuse of discretion. State v. Molinario, 400 So.2d 596 (La.1981); State v. Toussaint, 429 So.2d 206 (La.App. 1st Cir.1983). The trial judge apparently determined that Mrs. Pons had a casual conversation with some friends, did not discuss the merits of the case and that this conduct did not preclude the defendant from having a fair trial. State v. Louis, 322 So.2d 153 (La.1975). After carefully reviewing the record, we cannot say that the trial judge abused the much discretion afforded him by law when he dismissed the motions for mistrial and new trial.
These assignments of error are without merit.

JURY SHIELD LAW[6]
At the hearing on the motion for new trial, counsel for the defendant attempted to secure the testimony of Mrs. Pons about the conversations in question. The state invoked the provisions of the Louisiana *239 Jury Shield Law, La.R.S. 15:470, which provides as follows:

No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member. (Emphasis added).
The trial judge sustained the objection of the state and refused to allow the defendant to call the juror as a witness.
The jury privilege of La.R.S. 15:470 is not absolute and must yield to a substantial showing that the defendant was deprived of a constitutional right, such as that to have a fair trial. State v. Graham, 422 So.2d 123 (La.1982); State v. Sinegal, 393 So.2d 684 (La.1981); Durr v. Cook, 589 F.2d 891 (5th Cir.1979). It is implicit from the trial judge's ruling that he determined that no substantial showing was made to justify waiving the jury privilege. The evidence adduced did not reflect that the merits of the case were discussed or that the juror was prejudiced against the defendant. A casual conversation involving an off-color joke and "chitchat" is not sufficient to justify a waiver of the privilege. The ruling of the trial court was correct.
This assignment of error is without merit.

INJURING PUBLIC RECORDS[7]
During July or August of 1980, an audit was commenced of the records of the Boyet Junior High School. The auditor was unable to find the financial records for the 1979-1980 school year. The defendant was principal of the school during that time period. On March 25, 1981, pursuant to a search warrant, a search was conducted of a residence either owned or resided in by the defendant. During the search, two boxes were discovered beneath some shelves. The boxes contained checkbooks, ledgers, deposit books, and invoices for the 1979-1980 school year of Boyet Junior High School. The defendant admitted placing the boxes where they were discovered.
The offense of injuring public records is defined in La.R.S. 14:132 as follows:
Injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.
The essential elements of injuring public records as they pertain to this case are as follows:
1. intentional removal or concealment;
2. of a public record;
3. that the public record had been filed or deposited;
4. that the filing or depositing was by authority of law; and
5. that the public record had been filed or deposited in a public office or with any public officer.
The defendant does not contest that there was an intentional removal or concealment, that the records are public records [La.R.S. 44:1(A)(2)], that the office of principal is a public office or that he was a public officer [La.R.S. 14:2(9); La.R.S. 17:414.1; La.R.S. 42:1; La.R.S. 44:1(A)(1)]. The defendant does assert that the verdict on this count was contrary to the law and the evidence because there was no proof that the records were "filed or deposited, by authority of law, in any public office or with any public officer."
La.R.S. 14:132 does not make it a crime to remove or conceal public records which are merely in the possession of a public office or public officer. It is essential to the crime that the record be filed or deposited in the office or with the officer by authority of law. A law is an expression of legislative will. La.C.C. art. 1. The power to legislate is vested in the legislative branch of state government. La. Const. of 1974, art. III, § 1. Our review of the record indicates that at no time did the *240 state request the court to take judicial notice of a law which required the filing or depositing of the records in question with the office of principal, nor did the state introduce authentic evidence of such a law. La.R.S. 15:422(1). See, for example, La. R.S. 17:93 which requires the superintendent of schools of each parish to maintain certain records and La.R.S. 17:232(B) which requires classroom teachers to keep daily attendance records.
A plea of not guilty places upon the state the burden of proving beyond a reasonable doubt each element of the crime with which the defendant is charged. La. R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La.1981). The state failed to present any evidence to the jury that the records in question were filed or deposited "by authority of law." The laws cited by the state in brief do not pertain to the filing or depositing of the records in the instant case. La.R.S. 42:321 requires every public officer to deliver the records of his office to his successor. La. R.S. 42:322 makes it a crime for a public officer to withhold or detain public records from his successor or to mutilate, destroy or take the records away from the building or office where they are usually kept. La.R.S. 24:514 prohibits public officers from destroying any voucher or paper belonging to his office before it has been examined and passed upon by the legislative auditor. None of these laws mandate the filing and depositing of school checkbooks, ledgers, deposit books or invoices in the office of the school principal.
Where the state has failed to prove an essential element of a crime charged, the defendant is entitled to a judgment discharging him. State v. Williams, 423 So.2d 1048 (La.1982); State v. Fontana, 396 So.2d 1251 (La.1981). For the foregoing reasons, the defendant's conviction and sentence of injuring public records in Count XIII of the indictment are reversed, and the defendant is ordered discharged on this charge.

CLOSING ARGUMENTS BY THE STATE[8]
After the rebuttal closing argument by the state, counsel for the defendant approached the bench and apparently made a motion to retire the jury for the purpose of making a motion. The jury was retired and counsel for the defendant made a motion for a mistrial based on improper argument of the prosecutor. The defendant contended that the prosecutor referred to matters of his personal knowledge which were not in evidence and told the jury that the district attorney's office did not prosecute people unless they believed them guilty. This motion was denied by the trial judge. In his motion for a new trial, the defendant reurged improper rebuttal argument by the prosecutor and further contended that the prosecutor improperly called the defendant a "liar." The motion for the new trial was also denied.
A review of the record shows that no objection was made to the improper arguments designated in this appeal until after the state completed its rebuttal. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of occurrence. La.C.Cr.P. art. 841. This rule requiring contemporaneous objections is applicable to improper arguments by the state to the jury. State v. Prestridge, 399 So.2d 564, 578-579 (La.1981); State v. Smith, 339 So.2d 829, 833-834 (La. 1976). In the instant case, the defendant did not object to the alleged improper arguments "at the time of occurrence" but elected to allow them to accumulate during the course of the state's argument. One of the purposes of the contemporaneous objection rule is to allow a trial judge to immediately have notice of an alleged irregularity so that he may cure the problem and thus avoid a mistrial or reversal. The defendant had ample opportunity during the course of the state's closing argument to timely object to arguments he deemed improper and seek appropriate relief from the trial judge. La.C.Cr.P. art. 771. If we allow a defendant to bypass opportunities for objection *241 and still raise the irregularity on appeal, the objectives of the contemporaneous objection rule would be seriously undermined. State v. Morris, 429 So.2d 111 (La.1983). Improper argument by the prosecutor is not error patent on the face of the record. La.C. Cr.P. art. 920(2); State v. Webb, 419 So.2d 436 (La.1982).
These assignments of error are without merit.

JURY INSTRUCTIONS[9]
The trial court is required to charge the jury after the presentation of all evidence and closing arguments. La.C.Cr.P. art. 801. The court is required to charge the jury on "the law applicable to the case." La.C.Cr.P. art. 802. In all cases, the court must charge the jury on the presumption of innocence and reasonable doubt, whether requested to do so or not. La.C.Cr.P. art. 804. The court in the instant case, pursuant to this mandate, instructed the jury as follows:[10]
The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The presumption of innocence alone is sufficient to acquit a defendant unless and until the State has met its burden of proving his guilt beyond any reasonable doubt.[[11]] The defendant is not required to prove that he is correct. Thus the defendant begins the trial with a clean slate.[[12]]
The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.[[13]]
While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charges against him.[[14]]
In special charge No. 3, the defendant asked the court to further define reasonable doubt as follows:
Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.
This instruction was not given by the trial judge. A requested special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. La.C. Cr.P. art. 807. However, La.C.Cr.P. art. 804(A) provides, in pertinent part, as follows:
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
When Articles 807 and 804 are construed in pari materia it appears that Article 804 is an exception to Article 807 and that the trial judge is not mandated to give requested special instructions on the presumption of innocence or reasonable doubt because he is not required to give any further instruction *242 than that contained in Article 804. Further, the instruction given is a correct statement of the law. State v. Edwards, 419 So.2d 881 (La.1982); State v. Williams, 310 So.2d 528 (La.1975). In addition, it appears that special charge No. 3 is not wholly correct as required by Article 807. In Scurry v. United States, 347 F.2d 468 (D.C.Cir.1965), a charge similar to special charge No. 3 was given by the trial court. The Court of Appeal observed that being convinced beyond a reasonable doubt could not be equated with being willing to act in the more weighty and important matters in your own affairs, that a person acting on his own affairs would not necessarily be convinced beyond a reasonable doubt that he was correct, and that to equate these two concepts in a juror's mind was to deny the defendant the benefit of a reasonable doubt. We agree with these observations.
The trial court gave the following instruction on the duty of the jury to deliberate with a view toward reaching a verdict:
When you enter the jury room, it is your duty to consult with one another, to consider each other's views, and to discuss the evidence with the objective of reaching a just verdict, if you can do so without violence to your own individual judgment. Each of you must decide the case for yourself, but only after discussion and impartial consideration of the case with your fellow jurors.
You are not advocates for one side or the other. Do not hesitate to re-examine your own views and to change your opinion, if you are convinced you are wrong. But do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.
This instruction is identical to Louisiana Jury Instructions, 3.11 and requested special charge No. 9, except that the following last sentence of special charge No. 9 is not contained in Louisiana Jury Instructions, 3.11 and was not given by the trial judge:
If you believe your opinion to be reasonable, it would be a violation of your sworn duty to judge this case fairly and honestly as you are impressed with the evidence if you should surrender your honest belief and return a verdict which did not conform to the requirements that the State prove guilt beyond a reasonable doubt, failing which the accused must be acquitted.
The portion of special charge No. 9 not accepted by the trial court attempts to blend the concepts of reasonable doubt and the duty to deliberate. The language of this sentence is awkward and confusing. The general charges given by the trial court on reasonable doubt and the duty to deliberate correctly charge the jury on these concepts. A requested special charge need not be given if it is included in the general charges. La.C.Cr.P. art. 807; State v. Donahue, 408 So.2d 1262 (La.1982); State v. Tolbert, 390 So.2d 510 (La.1980).
These assignments of error are without merit.

CONSOLIDATION OF THEFT CHARGES[15]
The defendant was charged with ten counts of theft from the Board and five counts of theft from the District. He filed a motion to consolidate these charges into one count of theft from the Board and one count of theft from the District pursuant to La.C.Cr.P. art. 481. The trial court denied this request.
La.C.Cr.P. art. 481 provides as follows:
An indictment for theft may include several counts against the same defendant for distinct acts of theft, and the aggregate amount of the thefts shall determine the grade of the offense charged. If a defendant misappropriates money or other things of value, which were entrusted to him by virtue of his office, employment, or any fiduciary relationship, he may be charged in one count with theft of the aggregate amount misappropriated by him during the entire *243 time of his holding the office, employment, or fiduciary relationship.
(Emphasis added).
La.C.Cr.P. art. 5 provides that when interpreting the Code of Criminal Procedure, the word "shall" is mandatory, and the word "may" is permissive. cf. La.R.S. 1:3. Thus, Article 481 grants to the state the discretion to charge the defendant in one count or multiple counts. The state elected to charge in multiple counts, and it had a legal right to do so. The defendant has failed to cite any authority which would dictate a contrary result.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the verdict and sentence on Count XIII for injuring public records are reversed and the defendant is ordered discharged on that count. In all other respects, the verdicts returned and the sentences imposed are affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] La.C.Cr.P. art. 884.
[2] The $3,000 fines assessed on Counts I, VII, IX and X were apparently made concurrently with each other and the $3,000 fines assessed in Counts XIV, XV and XVII were made concurrently with each other. This $6,000 in fines with the $500 assessed on Count V, the $1,500 assessed on Count XIII, the $1,000 assessed on Count III and the $1,000 assessed on Count XVI total $10,000.
[3] Assignment of error No. 1.
[4] Assignment of error No. 2.
[5] Assignments of error Nos. 3 and 12B.
[6] Assignments of error Nos. 3 and 12B.
[7] Assignment of error No. 4.
[8] Assignments of error Nos. 5 and 12C.
[9] Assignments of error Nos. 6 and 7.
[10] The court's instruction is identical to the defendant's special charges 1 and 2, and the recommended jury charges found in 1 Chaney C. Joseph, Jr. & P. Raymond Lamonica, Louisiana Jury Instructions, 3.2 and 3.3 (1980), except as hereinafter noted.
[11] This sentence is included in the defendant's special charge 1, but is not included in Louisiana Jury Instructions, 3.2.
[12] This sentence is contained in Louisiana Jury Instructions, 3.2, but is not contained in the defendant's special charge No. 1.
[13] This sentence is identical to that found in Louisiana Jury Instructions, 3.2. In defendant's special charge No. 1, the sentence ends with the phrase "it is your duty to find him not guilty."
[14] The last two words "against him" are not contained in either defendant's special charge No. 2 or in Louisiana Jury Instructions, 3.3.
[15] Assignment of error No. 12A.