SCHOTT, Judge.
Defendant was convicted of attempted forcible rape, R.S. 14:27 and 14:42.1, and aggravated crime against nature (R.S. 14:89.1). Pursuant to R.S. 15:529.1 he was sentenced as a repeat offender to forty and thirty years for the respective offenses both without benefit of parole, probation or suspension of sentence and with the sentences to run consecutively.
The victim testified as follows: She had spent the evening of March 14, 1986 visiting with a girlfriend at her nearby apartment in the same complex as the victim’s. At about 1 a.m. she was walking home when she saw the defendant in an automobile. She recognized him as someone who lived in the neighborhood. He got out of the car, pulled a gun, and forced her into the car. After driving to another area he made her perform fellatio on him several times and submit to vaginal intercourse. At all times he held the gun on her. He drove her back to her apartment at about 7 a.m., she ran home, she told her boyfriend who lived with her that she had been raped by the defendant, and she called the police. Detective Davis took her to the hospital for an examination. On cross examination she denied having gone into a convenience store with defendant at about 11:30 p.m., March 14 and there having conversation with Severn Carter and she denied seeing Charles Bradley there.
Marian Simmons testified as follows: She was a long-time friend of the victim and lived in the same apartment complex with her. She too recognized defendant as someone she had seen in the complex but she never saw the victim with him. On March 14, 1986 the victim came to her house at about 10 p.m. and visited with her until about 1 a.m. when she left for home just across the complex.
Dr. Chadha examined the victim at Charity Hospital on March 15, 1986. She told him she had been raped orally and genitally. She was sad and emotionally upset. He found fresh scratch marks on her neck, abdomen, and arm. He found no evidence of seminal fluid, but this did not rule out the possibility of intercourse.
Detective Davis testified as follows: She arrived at the victim’s home about 7:30 a.m. and took her to the crime scene. They were accompanied by the victim’s boyfriend. Asked about the condition of the victim she said:
A. She was very traumatized. She was crying, and I had to bring her boy *575 friend with me on the crime scene, just to comfort her, to know that she had someone with her, even though I was with her. During this time of the interviewing, it was hard to interview her and ask her certain questions in front of her boyfriend, because she felt very embarrassed. When I asked her to explain the sexual offenses in detail as to what the assailant did her, or made her do, she advised me to let her boyfriend step out the car and he stepped out the car, and that’s when she explained to me, and he got back in; and as I went through the investigation, I really had to take my time with her because she was very upset.
Q. Was she able to go into more graphic details when her boy friend was not there?
A. Yes, sir.
Q. Was she able to respond to your questions though?
A. Yes. It took time, but she was able to respond. She was real nervous, stuttering. Like I said, she was traumatized, and I was as patient as I could have been with anyone.
By his first assignment of error defendant contends the trial court erred in allowing Dr. Chadha to testify that the victim told her she was abducted and raped by the defendant. Contrary to the state’s argument these statements were not admissible spontaneous declarations, excited utterances, or res gestae because they were made several hours after the victim had returned home and spoken to Detective Davis as well as her boyfriend. However, as in State v. McIntyre, 381 So.2d 408 (La.1980), Dr. Chadha’s testimony was entirely consistent with the victim’s and served merely to corroborate that testimony so that its admission constituted harmless error. See also State v. Lindsey, 404 So.2d 466, 479 (La.1981). This assignment has no merit.
By his second assignment defendant contends the trial court erroneously ruled out testimony of a prior inconsistent statement made by the victim. While she was on the stand the following testimony was elicited on cross examination:
Q. I see. Isn’t it a fact you talked to Bradley two, three or four days after this incident happened, or allegedly happened?
A. No.
Q. And isn’t it a fact that you told Bradley the reason why you had to blame someone for coming in at 6 or 7 o’clock in the morning was because your old man was going to whip up on you if you didn’t tell some story?
A. No.
Q. Isn’t it a fact that you made this man (defendant) a patsy, a goat, to avoid getting a whipping from your old man?
A. No.
Q. That’s not a fact?
A. No.
Q. And you didn’t tell Bradley anything to that effect?
A. The fact is that he raped me, and I wanted him picked up, and I wanted people to know just what he did to me.
Q. Right. Particularly your old man.
A. No, not particularly.
Later, Bradley was called by defendant and gave the following testimony:
Q. Now, did you see [the victim] several days later, three, four, five days later?
A. Yes, about a day or two later I saw [the victim].
Q. It was a day or two later?
A. Uh-huh.
Q. Was there any conversation at that time about Melvin being arrested?
A. Yes, she told me that he had been arrested, and — for sexual against her, and she told me that—
BY MR. WARD:
Wait a minute, I’m going to object. May I approach the bench?
BY THE COURT: Well I sustain the objection. That’s hearsay.
BY MR. WARD: It’s all hearsay.
BY MR. MUNDY: Yes. Alright.
*576 The trial court erred in sustaining the state’s objection to Bradley’s testimony, R.S. 15:493; but this does not necessarily constitute reversible error if it can be considered harmless. State v. Rovaris, 464 So.2d 958 (La.App. 4th Cir.1985). The standard for determining whether an error is harmless is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction and that the appellate court must be able to conclude that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421 (La.1980); State v. Rovaris, supra.
Defendant’s evidence consisted of the testimony of Severn Carter, Charles Bradley, and defendant’s wife. Carter testified that defendant and the victim came into a gasoline station-convenience store where she was a cashier around 11:30 p.m. on March 14, 1986; that they stayed there between ten and fifteen minutes; that neither defendant nor the victim acted or appeared unusual; and that defendant returned about 1 a.m. to talk and get gas. Carter stated that she was defendant’s friend, had known him since October, 1985, and gave her car to him (the car he was driving the night of the alleged crimes) several weeks previously because he took care of her baby.
Charles Bradley testified that he too was a friend of defendant and saw him at the convenience store with the victim between 11:30 p.m. and 12:30 a.m., March 15; he spoke to them both for a few minutes and they got into defendant’s car; and he followed them in his car and saw her get out at her apartment and him continue on to the trailer park next door where he (the defendant) lived. He stated that he saw this as he was following them at a distance of a block or two away. It was at this point in Bradley’s testimony that the portion quoted above occurred. On cross examination Bradley testified that he and defendant were friends since three years previous, defendant had visited in his home several times, and defendant had been Bradley’s sister’s boyfriend.
Defendant’s wife testified on direct examination that he got home on the morning of March 16 “before dawn” or “a while” before the police came to their house at 7 a.m. and arrested him.
With the evidence before the jury it is clear that they assigned no credibility to the testimony of the defense witnesses. The question is, what effect would the addition of the testimony by Bradley have had on the jury. The jury knew from the questions asked of the victim and from the first questions put to Bradley that he would have testified that the victim told him she was accusing defendant of rape in order to avoid the wrath of her boyfriend. Therefore, this supposed doubt about defendant’s guilt was already planted. The addition of Bradley’s testimony would not have added anything. Furthermore, it is obvious from Bradley’s testimony that he was not a credible witness and the exclusion of more incredible testimony would not have contributed to defendant’s conviction. Bradley’s testimony was rife with contradictions, inaccuracies, and curiosities such that the additional testimony would have made no difference. In short, we can declare a belief that the trial court’s erroneous exclusion of the testimony was harmless beyond a reasonable doubt. This assignment has no merit.
By his third assignment defendant contends his sentence was excessive. We need not address his arguments because the sentence is illegal. Since he was convicted on the same day for the two offenses the conviction must be treated as one conviction for purposes of the Habitual Offender Law, R.S. 15:529.1. State v. Sherer, 411 So.2d 1050 (La.1982). Since we are not in a position to determine which sentence should be affirmed we must vacate and remand the case for resentencing.
Defendant filed a pro se supplemental brief in which he attacks the validity of his adjudication as an habitual offender on the basis that he was not advised of his right to remain silent and that the state failed to show that less than five years elapsed since the completion of the sentence for the pred *577 icate offense. Since we have resolved to vacate the sentences we need not address defendant’s argument.
Accordingly, the convictions are affirmed, but the sentence are vacated and the case is remanded for resentencing in accordance with law.
AFFIRMED, SENTENCE VACATED, REMANDED.