670 So.2d 562 (1996)
STATE of Louisiana
v.
Lisa WARD.
No. 94-KA-0490.
Court of Appeal of Louisiana, Fourth Circuit.
February 29, 1996.
*563 Harry F. Connick, District Attorney and Kim Madere Graham, Assistant District Attorney of Orleans Parish, New Orleans, for Appellee.
Elizabeth W. Cole, Supervising Attorney, Christina Mims, Student Attorney, Alton Hall, Supervising Attorney, and Wil Frentzen, Student Attorney, Tulane Law Clinic, New Orleans, for Defendant.
Before ARMSTRONG, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
I. STATEMENT OF THE CASE
On April 7, 1986 in Criminal District Court case number 312-265, Lisa Ward pled guilty to armed robbery in violation of LSA-R.S. 14:64. This conviction is final, the time has been served and the conviction is not on appeal. This felony conviction is mentioned only because it is the predicate prior felony for multiple offender purposes.
On December 4, 1992 in Criminal District Court case number 355-105, a jury found Lisa Ward guilty of three counts of purse snatching, a violation of LSA-R.S. 14:65.1. These are the convictions currently on appeal. Defendant Ward moved for a new trial, which was denied. The court sentenced her on each count to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. The sentences were to run concurrently.
The State filed a multiple offender bill of information charging the defendant as a second felony offender as to each count of the three purse snatching convictions. Following a hearing on August 13, 1993, the district court found the defendant to be a multiple offender, vacated the previous sentences, and sentenced her under the provisions of LSA-R.S. 15:529.1 on each count to serve twenty years at hard labor. The sentences are to run concurrently. This appeal followed.[1]

II. STATEMENT OF THE FACTS
Mrs. Lena Augustine, a sixty-eight year old grandmother, testified at trial that she returned to her home in Gentilly on December 16, 1991, after banking at the Whitney Bank branch at Elysian Fields and Gentilly Boulevard. As she was unlocking her front door, an assailant punched her in the back and began pulling on her purse. The assailant dragged her off the porch and across the lawn to a cemented area. The female assailant finally wrested the purse from Mrs. Augustine, causing abrasions to her leg, shoulder, and face in the process. The assailant and another woman, who had been acting as a look-out, departed the scene.
Mrs. Augustine stated that the incident lasted for approximately five to ten minutes and that she was able to see the faces of both women. She testified that she identified the two women out of a photographic line-up conducted in her home three weeks after the incident. She stated that Sergeant Arden Taylor had not forced or induced her to identify any particular photograph. She identified Patricia Wright as the woman who had punched her and grabbed her purse. She identified defendant Lisa Ward as the woman who had acted as look-out. She noted that the hair on both women was different now and that one woman's face was thinner than it was before.
Mrs. Augustine also testified that her husband, who had been inside their home, had *564 come to the kitchen window in the front of the house during the incident. He opened the window and yelled at the women to leave his wife alone. The women did not comply with his request. Mrs. Augustine explained that her husband had recently undergone a hip operation and could not leave the house. She stated that her husband was not at court because he was in Touro Hospital.
Mrs. Ethel Gladys Neebs, an eighty-four year old mother of two, testified that on December 5, 1991, she had just returned to her home on Monterey Street from the Whitney Bank branch on Elysian Fields. After Mrs. Neebs had pulled into her driveway, a woman approached her and asked if Mrs. Neebs knew someone who lived in the neighborhood. Before Mrs. Neebs exited the car, the woman grabbed her purse, pulled her out of the car, and dragged her on the ground before finally yanking the purse away. The woman then ran. Mrs. Neebs followed her to the corner.
Although it had been daylight at the time of the incident, Mrs. Neebs testified on direct examination that she did not get a good look at the woman's face. However, when Sergeant Arden Taylor showed her an array of photographs, she tentatively identified a photograph of Lisa Ward as the perpetrator because she was "tall and slender." She stated that the Sergeant did not tell her which photograph to select or force her to do so. On cross-examination, Mrs. Neebs conceded she was not "absolutely positively sure," but stated she was "pretty sure" that Lisa Ward was the woman who grabbed her purse because she looked like the perpetrator.
Mrs. Ella Tupper, an eighty-two year old widow, testified that during the afternoon of December 24, 1991, she returned home from the National Grocery Store near the Hibernia Bank branch on Gentilly Boulevard. At the rear of her car, she felt her arm "go out" and turned to see a tall woman with short hair running away with her purse. Her neighbor, Mr. David Wells, witnessed the incident, exited his home, and ran after the perpetrator. Although he did not catch the woman, he was able to obtain a number on the license plate of the vehicle in which the woman escaped. Mrs. Tupper testified that another man drove up to where she and Mr. Wells were standing and told them that he had seen two women in a brown car driving away. Mrs. Tupper was not able to identify the perpetrator.
Mr. Wells testified that he was forty years old and worked as an inventory manager. He explained that Mrs. Tupper lived across the street and one house down from him. On the afternoon of Christmas Eve, he saw a woman whom he did not know standing near Mrs. Tupper in her driveway. He saw the woman grab the shoulder strap on Mrs. Tupper's purse and begin to run. As he exited his house, the perpetrator was running diagonally in his direction. Mr. Wells chased the woman to the corner, where he saw a car with its engine running. A woman in the car opened the car door when she saw the perpetrator being chased by Mr. Wells. The perpetrator reached the car first and the two women drove away. Mr. Wells was able to get the license plate number. After writing the number down, he called 911.
Mr. Wells stated that he was able "to get a good look" at the woman running towards him. He said that he was also able "to get a good look" at the woman in the car because she had turned towards him as he ran up to the car. He described the car as a small brown Chevrolet. Sergeant Arden Taylor later showed him two sets of six photographs. He identified Patricia Wright as the woman who had taken Mrs. Tupper's purse. He identified Lisa Ward as the woman who had been driving the getaway vehicle. Mr. Wells stated that he was not influenced or coerced by Sergeant Taylor into picking any particular photograph. Mr. Wells testified that he was "certain" about the identifications he had made.
Sergeant Arden Taylor testified that he had been investigating a series of purse snatchings in the Gentilly Area in December of, 1991 during the holidays. Until Mr. Wells provided a license plate number, the police did not have any leads to the perpetrators. Taylor eventually located the owner of the vehicle, Ms. Dorthea Raymond. Ms. Dorthea Raymond told the officer that her daughter, defendant Lisa Ward, had used the *565 vehicle on Christmas Eve. Ms. Raymond told the officer that her daughter did not have a driver's license, so a friend of the daughter's whom she knew as "Trish" was driving the car. Ms. Raymond later told the officer that the friend's full name was Patricia Wright. With these two names, the officer compiled line-ups with the photographs of Ward and Wright. He displayed these photographic arrays to Mr. Wells who identified Lisa Ward and Patricia Wright as the perpetrators of the Tupper purse snatching. He also displayed the line-ups to Mr. and Mrs. Augustine. Separated from her husband, Mrs. Augustine identified Lisa Ward and Patricia Wright as the women who had stolen her purse. In another room away from his wife, Mr. Augustine also identified Ward and Wright as the perpetrators. Finally, Sergeant Taylor exhibited the photographs to Mrs. Neebs. Although she could not identify anyone from the first set of photographs, she identified Lisa Ward as the perpetrator from the second set of photographs. The officer testified that he did not force the witnesses to make any particular identification or suggesting to them which photographs to select.
In other testimony, Sergeant Taylor marked a diagram showing the locations of the purse snatchings and of nearby banks and businesses. He also stated that the defendants' hairstyles at trial differed from the hairstyles depicted in the photographs. He described Wright as now having shorter hair and being thinner.
A videotape of testimony from Mr. Lionel Augustine was shown to the jurors. This testimony was taken at the Augustine residence where the motions hearing had been relocated because of the witnesses' health problems. A transcript of the videotape is not contained in the record, but the videotape was introduced into evidence as State's Exhibit 12. According to the tape, Mr. Augustine described his health problems as a broken hip, loss of sight in his left eye, and loss of hearing. Sitting on a sofa in front of a walking aid, he stated that he was unable to leave his home. On the day of the incident, he heard a noise and went to the kitchen window where he saw two women struggling with his wife. He moved to the front door and yelled to the women to leave his wife alone. He estimated that the women were approximately twenty feet from him. Mr. Augustine testified about a photographic line-up conducted in his home approximately two weeks after the incident. He acknowledged that he had picked out a photograph of one of the women who had struggled with his wife. He admitted that he did not see the woman "square in the face" but could recognize her by her hairstyle. He conceded that he had not been able to identify the other woman.
The State noted for the record that Mr. Augustine's signature was located on the back of Patricia Wright's photograph and that the witness had made no identification from the array containing a photograph of Lisa Ward. After introducing several exhibits into evidence, the State rested.
The defense called Sergeant Taylor to the stand. He explained the method of compiling a line-up and the procedures used in conducting the line-up with Mr. Augustine. He testified that Mr. Augustine's identification had been "tentative," but he added that Mr. Augustine had been "sure" when he made the identification. There was also testimony about hairstyles and whether the officer could recognize a "jheri curl." When questioned by the defense, the officer agreed that the hairstyle of Patricia Wright in the photograph selected by Mr. Augustine was a jheri curl.

III. DISCUSSION

A. Errors Patent
A review of the record reveals two potential errors patent.

1. Sentencing Delay
First, the district court failed to observe the proper delay in sentencing the defendant after denying her motion for new trial. The minute entry for the sentencing of February 10, 1993, indicates that the defendant filed a motion for new trial and that this motion was denied by the district court.[2] *566 The minute entry, however, does not indicate whether the defendant waived the twenty-four-hour delay in sentencing required by LSA-C.Cr.P. art. 873. In State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991), this Court held that the failure to observe the delay would be deemed harmless error where the defendant does not challenge his sentence on appeal. In the present case, no error has been raised as to the defendant's sentences, therefore, the failure of the district court to observe the delay is considered harmless error.

2. Multiple Offender Enhancement
Second, the issue has been raised as an error patent that the district court erred in enhancing the defendant's sentences on all three counts of purse snatching. In the multiple offender bill of information, the defendant was charged as a second felony offender on each count, The district court found her to be a second felony offender as to each count, vacated the prior sentences, and imposed new sentences under the provisions of the habitual offender law. Because of the confusion in this area of the law and the continued application of the Sherer "one day, one conviction" rule to multiple offender adjudications, we examine the validity of the Sherer rule.
In State v. Sherer, 411 So.2d 1050 (La. 1982), the defendant killed two people in a head-on collision when he crossed over the centerline while driving drunk. In that case there was one accident occurring at one place and one time with two victims injured simultaneously. We do not know if the defendant was charged under one bill or not, because it does not so state in the opinion, but we do know he was charged with two counts of negligent homicide. The defendant was tried at one trial for both deaths, thus both verdicts were returned on the same day. In addition to the two deaths, Sherer had two prior felony convictions. Sherer was sentenced as a habitual offender for each of the deaths. The Supreme Court vacated the sentence holding "more than one count entered on the same day should be treated as one conviction".
In State v. Algere, 474 So.2d 24 (La.App. 4th Cir.1985), writ denied, 475 So.2d 365 (La.1985), the defendant committed four completely separate offenses on four different dates, was charged under four separate bills, and pled guilty to all four at the same time which resulted in four convictions on the same day. This court remanded to the trial court for further proceedings on all four bills of information against the defendant as an habitual offender stating:
When defendant committed armed robbery and second degree battery on September 26, 1983 he had been convicted of simple burglary on November 18, 1981 and thus earned the distinction of being an habitual offender. When he committed armed robbery and attempted murder against another victim on November 17, 1983 he qualified again as a habitual offender because of his 1981 conviction. The fact that he had already qualified once should not exempt him from enhanced punishment for this new offense. The same applies to his new armed robberies of December 7 and December 20, 1983. He could have been tried separately for each offense. No valid reason exists for exempting him from enhanced penalties for all four offenses simply because he decided to plead guilty to all four at the same time. (At 25).
The Louisiana Supreme Court denied writs in Algere and it does not appear to have been overruled by an en banc or five judge panel of this court.
In State v. Lennon, 496 So.2d 1159 (La. App. 4 Cir.1986) appeal after remand 95-0402 (La.App. 4 Cir. 9/15/95), 661 So.2d 1047, the defendant was charged with three counts of aggravated burglary and three counts of armed robbery arising out of four separate and distinct incidents over a two month period. A jury found him guilty on all counts and eventually he was resentenced as a second offender. At pages 1160-1161, this court stated:
The Louisiana Supreme Court and this court have held that multiple convictions entered on the same date must be treated as one conviction for enhancement purposes under LSA-R.S.15:529.1. State v. Sherer, (citation omitted); State v. Killion, *567 (citation omitted). State v. Wells (citation omitted). In the instant case the defendant was convicted of three counts of aggravated burglary and three counts of armed robbery on the same day. The trial court doubled the maximum terms of incarceration on each count. We note that the state acknowledged this error in its brief although it argued that the defendant's case should not be remanded for resentencing, which is contrary to the holdings in Sherer, supra, Killion, supra, and Wells, supra. Accordingly, we find that the trial court improperly sentenced the defendant as a second offender.

The Lennon case does not mention Algere.

In State v. Denis, 524 So.2d 114 (La.App. 4 Cir.1988), writ denied 530 So.2d 564 (La. 1988) the defendant committed 4 separate and distinct criminal acts at 4 separate locations with 4 separate and distinct victims, but all on the same day, June 17, 1984. Prior to the June 17 crimes, defendant had two prior burglary convictions and at the sentencing the trial judge found him to be a professional burglar. The offenses were charged under one bill. The defendant initially pled guilty to all four counts, but later withdrew the plea and went to trial where he was found guilty on all four counts on the same day and was thus convicted on all four counts on the same day. This court held: "The Louisiana Supreme Court has held that convictions on more than one count entered on the same date should be treated as one conviction for purposes of enhancing sentences pursuant to LSA-R.S. 15:529.1. State v. Sherer, (citation omitted). Accordingly, defendant's enhanced sentences must be vacated." (At 116). Denis also does not mention Algere.
In State v. Hatcher, 568 So.2d 578 (La. App. 4 Cir.1990) writ denied 572 So.2d 87 (La.1991) the defendant was charged with 4 countstwo of aggravated crime against nature, one of forcible rape and one of sexual batteryarising from criminal incidents on 2 separate dates, August 23, 1987 and August 26, 1987 against one victim.[3] All counts were charged under one bill and tried at one trial at which the jury found defendant guilty as charged. Because the defendant had a prior felony conviction at the time that these crimes were committed, the trial court sentenced him as a second offender on all four counts. This court stated: "In State v. Sherer, (citation omitted), the Louisiana Supreme Court held that convictions on more than one count entered on the same date must be treated as one conviction for purposes of sentence enchancement (sic) under R.S. 15:529.1. Accordingly, under Sherer, we vacate defendant's sentences and remand this matter for resentencing." Hatcher does not mention Algere.
In State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991) defendant Tommy Porter was convicted of three counts of armed robbery arising out of a single criminal episode in which he robbed three occupants of an apartment while he was armed with a gun. At the time of the armed robberies, Porter already had two prior felony convictions. In discussing the issue of enhancement, the Supreme Court stated:
Thus, there is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same day. Where an offender with a prior felony conviction subsequently commits multiple separate felonies and is thereafter convicted of the subsequent felonies, he is subject to being adjudicated a habitual offender as to each conviction. It matters not that the convictions occur on the same date. Sherer, which involved convictions arising out of a single criminal act, should not be applied to limit enhancement of more than one conviction obtained on the same day arising out of separate criminal offenses committed at separate times.

However, policy considerations support the continued viability of the rule precluding habitual offender enhancement of more than one conviction obtained the same date arising out of a single criminal act or episode. Severe penalty enhancement statutes must be *568 strictly construed. (Citations omitted). The purposes of the habitual offender statute to discourage commission of successive felonies and to enhance punishment for subsequent felonies are not served by enhancing punishment for multiple offenses arising out of one incident of criminal conduct. Multiple convictions obtained the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing.

Accordingly, relator Porter is entitled to the relief he seeks. Having been convicted on the same day of three counts of armed robbery arising out of one criminal episode, it was error to adjudicate him as a habitual offender and sentence him as such on all three convictions. [Emphasis supplied].
Thus under the Supreme Court's most recent pronouncement in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991) only multiple convictions arising out of the same criminal act or episode and obtained on the same date will be considered as a single conviction for purposes of the habitual offender law. We note that Porter cites Algere. Thus the Supreme Court has implicitly overruled the Lennon-Denis-Hatcher line of jurisprudence in the Fourth Circuit.
Under Porter, the new general rule is that the trial court can multiple bill convictions rendered on the same day. The new limited exclusion is that the "one day, one conviction" rule only applies in the following two cases:
(1) When the defendant does not have a prior final felony conviction before the case currently at issue and the case currently at issue involves multiple counts or multiple victims or multiple offenses arising out of a single criminal act or episode or incident or event, one of the counts arising out of that single criminal act or episode or incident cannot be used as the predicate offense for other criminal counts arising out of that same single criminal act or episode or incident for multiple offender purposes. For example, Mr. X has no prior felony convictions. On January 1, 1996 at 2:01 p.m., Mr. X commits an armed robbery of two pedestrians, Mr. and Mrs. A, who are walking together. He robs both people at the same time. Thus there are two victims, two potential counts, two potential bills of information which may be combined in one bill, and there could be one or two trials, but there is only one episode or incident or event. He is charged with 2 counts of armed robbery, one count for each victim. Both charges are tried in one trial, the jury finds him guilty and he is thus convicted of both counts on the same day. In this case, the trial court may not use the felony conviction of armed robbery committed on January 1, 1996 at 2:01 p.m. against Mr. A as the predicate offense and then call Mr. X a second offender for the felony conviction of armed robbery committed on January 1, 1996 at 2:01 p.m. against Mrs. A. But the determinative thing to remember is not that the convictions were rendered on the same date, but rather that the convictions arose out of the same criminal act or episode or incident or event. If, for example, Mr. X had no prior final felony convictions and he committed the armed robberies against Mr. and Mrs. A on January 1 at 2:01 p.m. discussed above, and then Mr. X traveled two blocks over where he robbed Mr. B at gunpoint on January 1 at 2:45 p.m. Then the trial court could use a final conviction in the Mr. A robbery or the Mrs. A robbery as the predicate offense, and the Mr. B robbery as a second offense for multiple offender purposes because they were two separate and distinct criminal acts or incidents or episodes or events.
(2) When there is a prior final felony conviction before the case currently at issue, multiple counts arising out of a single criminal act or episode or incident or event cannot each be enhanced under the multiple offender statute. If, for example, Mr. X had a prior final felony conviction from 1994 and then committed the armed robberies in 1996 against the A couple described above. Then the trial court could use the 1994 conviction as the predicate for only one of the 1996 offenses, because both of the 1996 offenses arise out of the same criminal act or episode or incident or event. If, however, Mr. X had a prior final felony conviction in *569 1994 and he committed the armed robberies against Mr. and Mrs. A on January 1 at 2:01 p.m. discussed above, and then Mr. X traveled two blocks over where he robbed Mr. B at gunpoint on January 1 at 2:45 p.m., then the trial court could use the 1994 felony as the predicate conviction for only one of the A robberies as discussed above, but could also use the 1994 felony as the predicate for the B robbery, because the B robbery arises out of a different criminal act or episode or incident or event than the A robberies. Thus the "one day, one conviction" rule is misnamed and should be known as the "one event, one day, one conviction" rule.
Applying the rule of Porter to the instant case, the defendant's multiple convictions arose out of three separate and distinct criminal episodes on different dates and against three different victims, even though the convictions were obtained on the same date. Additionally, defendant's prior felony conviction was for a different criminal event than the ones presently before us and was final prior to the commission of these crimes. Accordingly, the trial court correctly sentenced her as a multiple offender on all three counts. Thus it is not an error patent upon the face of the record, because it is not an error at all. Accordingly, the defendant's habitual offender adjudications and sentences are affirmed.

B. Assignment of Error
In his sole assignment of error, the defendant asserts the district court erred in denying his motion for mistrial based on the prosecutor's improper argument referencing another crime allegedly committed by the defendants.
During his rebuttal argument, the prosecutor stated:
Look at poor Mr. Lionel Augustine. He makes an identification with Sergeant Taylor two weeks after the incident. He says, Yeah; that's her. The hair looks right. Yeah; I saw her face, things like that. [sic] Six months later, we do motion hearings in his house. And his health has deteriorated. And his memory has faded. And he said on the tape: I can't remember. I can't remember. I know the hair. The hair looked right. Yeah; I signed the back of the photo. Nobody forced me to sign the back of the photo. Nobody pointed out who to sign behind. But I can't remember today. And where is he today? Is he in court? Did he come in and testify? No. he's in the hospital. Congratulations, ladies.
COUNSEL: Objection, Your Honor.
STATE: Congratulations.
COUNSEL: Objection, Your Honor.
COURT: That's sustained. That's sustained, Mr. Wolff. You know well, Mr. Wolff.
COUNSEL: Your Honor
STATE: You pick on the elderly
COURT: Yes, sir. Just a second.
COUNSEL: I'll wait till he finishes his argument.
COURT: Move on, Mr. Wolff.
Defense counsel subsequently, but unsuccessfully, moved for a mistrial. Out of the presence of the jury, counsel stated:
[The motion for mistrial is b]ased on the fact that the state alleged that Patricia Wright and Lisa Ward were involved in another crime, in the sense that they had put Mr. Augustine in the hospital in his closing.
COURT: And, again, for the record, that motion for a mistrial is denied.
As counsel did at trial, the defendant contends the State's argument improperly referred to the alleged commission of another crime of violence against Mr. Augustine. She argues that the prosecutor effectively accused the defendants of causing Mr. Augustine's hospitalization by physically injuring him either during the commission of the crime or thereafter so as to prevent him from testifying against them. The defendant maintains that a mistrial was mandated in her case by the Code of Criminal Procedure, Articles 770 and 774.
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment made within hearing of the jury by the district attorney, during the trial or in argument, refers directly or indirectly to another *570 crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. LSA-C.Cr.P. art. 770(2). The argument, which may not appeal to prejudice, shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. LSA-C.Cr.P. art. 774. The state's rebuttal shall be confined to answering the argument of the defendant.
Although the prosecutor may have exceeded the proper scope of rebuttal argument, his comment cannot reasonably be construed under the circumstances of this case as a reference, either direct or indirect, to the alleged commission of another offense. The jury was well aware that Mr. Augustine was in poor health and that his health problems were the cause of his absence from the courtroom. Mrs. Augustine testified that her husband could not leave the house because of a hip operation and that he was in Touro Hospital rather than at trial. The State, before introducing the videotape, informed the jury that Mr. Augustine was in the hospital and unable to come to court. On the videotape of Mr. Augustine's testimony shown to the jury, Mr. Augustine explained his rather serious health problems. The videotape also made plain that the gentleman was not in the best of health at the time of the motions hearing conducted on July 26, 1992, some five months before the trial. Finally, the prosecutor's comment taken in its entirety implies that the defendants preyed on elderly victims with the knowledge that the victims might not be physically or mentally able to testify against them at a later date. Although the import of the prosecutor's comment is arguably outside the scope of proper argument, the remark did not directly or indirectly reference the alleged commission of a separate crime of violence against Mr. Augustine. Consequently, a mistrial was not mandated under Article 770.
Furthermore, the prosecutor's remark did not measurably jeopardize the fairness of the defendant's trial such that a mistrial was warranted under Article 771. The jury shall be admonished to disregard a district attorney's remark or comment which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant. LSA-C.Cr.P. art. 771(1). A mistrial may be granted if the district court finds that an admonition is not sufficient to assure the defendant a fair trial. LSA-C.Cr.P. art. 771. However, because of the drastic nature of a mistrial, such remedy is authorized only when the defendant has suffered substantial prejudice. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Mayho, 601 So.2d 783 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1121 (La.1992). Prosecutorial remarks or comments which fall outside the scope of proper argument are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); State v. Jarman, 445 So.2d 1184 (La.1984); State v. Williams, 575 So.2d 452 (La.App. 4th Cir.1991), writ denied, 578 So.2d 130 (La.1991).
Here, the defendant has not shown any prejudice as a result of the prosecutor's remark. The defendant's participation in the charged offenses was established beyond a reasonable doubt by eyewitness testimony. Although Mr. Augustine did not identify defendant Ward as a perpetrator of the offense against his wife, Mrs. Augustine, at the photographic line-up and at trial, did identify the defendant and Wright as the women who had taken her purse that day. At a photographic line-up, Mrs. Neebs tentatively identified defendant Ward as the woman who had taken her purse. At trial, she stated that she was "pretty sure" that the defendant was the woman who had grabbed her purse. Mr. Wells identified defendant Wright as the woman who had taken Mrs. Tupper's purse and defendant Ward as the woman who had been driving the getaway vehicle. He obtained a license plate number for the vehicle which was later traced to defendant Ward's mother, Ms. Raymond. Ms. Raymond informed the police that her daughter and Patricia Wright had been using the car on Christmas Eve, the day of the purse snatching committed against Mrs. Tupper. The State's evidence, then, was fairly overwhelming *571 against the defendants. Also, the district court had previously instructed the jury during the prosecutor's rebuttal that the argument of the attorneys was strictly their interpretation of the evidence and that the jurors were to decide the facts of the case. In this light, the prosecutor's comment did not substantially prejudice the defendant or contribute to the jury's verdict of guilt on each of the three counts. The district court, therefore, did not abuse its discretion in denying the motion for mistrial.
For the reasons discussed, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The co-defendant Patricia Wright was also charged with three counts of purse snatching, Counts 1, 2, and 4 of the bill of information. The State entered a nolle prosequi as to Count 2 on October 5, 1993. Wright was found guilty as charged on the remaining two counts following a joint trial on December 4, 1992. After pleading guilty to a multiple offender bill charging her as a second felony offender, Wright was sentenced under the provisions of La.R.S. 15:529.1 on each count to serve twenty years at hard labor. The sentences are to run concurrently. Wright has not sought an appeal in this Court.
[2] The record contains a hand-written motion for new trial filed by the defendant's trial counsel. This motion, however, does not articulate any grounds for granting the motion.
[3] The defendant forced the victim to meet him after the first rape by threatening to kill her family.