J^KLEES, Chief Judge.
On May 15, 1997, appellant Robert Newman was charged by bill of information with two counts of first degree robbery. On December 1, 1997 he was tried by a jury which found him guilty as charged on both counts. On December 12, 1997, he was sentenced to five years at hard labor, without benefit of probation, parole or suspension of sentence, on each count, with the sentences to run concurrently. On January 8, 1998, he was adjudicated a triple offender and sentenced to life im *127 prisonment without benefit of probation, parole or suspension of sentence.
Appellant now appeals on the basis of six assignments of error.

STATEMENT OF THE FACTS

On March 1, 1996, shortly before 10:00 p.m., Nicky Hayes and Robin Lageaux were working at an ice cream store in New Orleans and were about to close for the evening when a white male entered the store. Hayes was washing his hands and Lageaux was at the cash register. Hayes heard no conversation, but noticed that Lageaux was trying to get his attention with her eyes. Hayes went over to the cash register, at which time the subject told him “Give me your f-money.” Hayes’s first response was anger. However, the subject said he meant ^business and pointed at Hayes with something in his left hand through his jacket. At that point, Hayes knew the subject meant business and followed his instructions. •
The subject ordered Hayes to open the cash register and put the money in a bag. Hayes complied. The subject then ordered Hayes and Lageaux to walk toward the back and followed after them. As Hayes -and Lageaux got to the back of the store, Hayes heard the front door open, turned around, and saw the subject run out. Hayes immediately locked the store and called the police. He gave the responding officer an account of the incident and a description of the perpetrator.
Subsequently, Detective Lionel Adams met with the employees, took statements, and individually showed them a photographic line-up. Hayes positively identified the defendant as the perpetrator. La-geaux made a tentative identification of the defendant. Both Hayes and Det. Adams denied that Adams did anything to suggest which photograph Hayes should select. The photographic lineup consisted of subjects with mustaches and beards. Hayes had previously described the perpetrator as having a mustache and beard.
Hayes also made a positive in-court identification of the defendant, despite the defendant’s clean-shaven appearance at trial. In addition, Hayes testified that, subsequent to reporting the incident to the police, he remembered that the perpetrator had a tattoo on a finger of his right hand. The defendant was required to show his hand to Hayes, who positively identified it as the tattoo on the hand of the perpetrator. The defendant was also required to show the tattoo to the jury.
Lageaux did not testify because she had moved to Houston, where she was enrolled in college.
|3On April 3,1996, between 8:00 a.m. and 9:00 a.m., Irma Fourcha was working at a bakery shop in New Orleans when a white male entered the store. One male and one female customer were in the store when the subject entered. The subject waited until Ms. Fourcha served the two customers. He then told her that it was a robbery and that she should put all the cash in the register in a bag. He further told her that he only wanted paper money, no change or food stamps. The subject had his right hand in his jacket pocket, implying that he had a gun, and told her that she should make sure he did not have to use it. She followed the subject’s instructions. After she handed the subject the bag of cash, he left the store. Ms. Four-cha first called the bakery headquarters, then the police. The customers left the store and Ms. Fourcha locked the door behind them.
A few days after the robbery, Ms. Four-cha identified the defendant from a photographic lineup as the perpetrator. She testified that the defendant had no facial hair when he robbed her, but that she nevertheless could recognize him in the photographic lineup of bearded subjects because her husband does not shave every day. She denied having identified the defendant due to any suggestion by the police officer who conducted the lineup.

*128
ERRORS PATENT/ASSIGNMENT FOUR

Appellant argues that the trial court failed to delineate which charge or count was multiple-billed. A review of the record, including the multiple bill of information and the multiple bill and sentencing transcript, confirms this fact. In addition, the appellant argues that the trial court never made a finding, for the record, that the state had proven that he was a multiple offender or adjudicated him as such.
|4As to the first claim, the State argues that, because the instant convictions arose out of separate and distinct criminal episodes, the appellant could be properly sentenced as a multiple offender on both counts. State v. Ward, 94-0490 (La.App. 4th Cir.2/29/96), 670 So.2d 562, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165. However, in the instant case, the multiple bill of information charges the appellant with first degree robbery, not two counts of first degree robbery, as the offense to be enhanced.
In State v. Valentine, 95-0970 (La.App. 4th Cir.1/19/96), 668 So.2d 383, writ denied, 97-2011 (La.2/13/98), 706 So.2d 988, the defendant was convicted on two counts of indecent behavior with a juvenile. The offenses occurred on separate dates at separate locations, albeit on the same victim. The trial court found the defendant to be a fourth felony offender and sentenced him to twenty years at hard labor on each count, the sentences to run concurrently. However, because the multiple bill alleged only a single conviction for indecent behavior without specifying which count, the court vacated the multiple offender adjudication and sentencing and remanded the case for resentencing. Similarly, in this case, because it is not clear which count is being enhanced, the multiple adjudication and sentence must be vacated.
Because the multiple bill adjudication must be vacated, the appellant’s second claim is moot. Nevertheless, it is noted that, after the State put forth its proof, the court asked if the appellant was being charged as a triple offender, or as a triple and violent offender. The prosecuting attorney advised the court that the appellant was multiple-billed as a triple offender, but that the two instant offenses of first degree robbery and the numerous predicate offenses of first degree robbery | ¿mandated that he be sentenced as a triple and violent offender.[1] The trial court then stated:
Pursuant to the provisions, Mr. Robert L. Newman, in case number 389-689, and pursuant to provisions of Louisiana Article 15:529.1, it’s going to be the sentence of this court that you be turned over to the Department of Corrections for the rest of your natural life, without benefit of parole, probation or suspension of sentence.
I thought you were going to get a number. I thought that they were dealing with just a triple offender, but they’re dealing with triple life.
You all need to do whatever you need to do with the appellate project to deal with this.
It is clear from this and the preceding language, that the trial court accepted the State’s proof and adjudicated the appellant a triple offender, under the habitual offender statute, when he sentenced him to life imprisonment as a triple offender with violent offenses. There is no merit to the appellant’s claim that he was never adjudicated a triple offender.

ASSIGNMENT TWO

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the en *129 tirety of the evidence both admissible and inadmissible is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. State v. Hearold, 603 So.2d 731 (La.1992). Thus, although insufficiency of evidence is not the first trial error argued by the appellant, it must be the first considered.
| fiWhen assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). The reviewing court is to consider the record as a whole, and if rational triers of fact could disagree as to the Interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305, 1309-10 (La.1988). In applying this standard, the reviewing court must defer to the credibility choices and justifiable inferences of fact made by the jury. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Foy, 439 So.2d 433, 436 (La.1983). The determination of credibility is a question of fact within the sound discretion of the trier of fact and wilL not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
La. R.S. 14:64.1 defines first degree robbery as “the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.” To convict for first degree robbery, the state must prove that the offender induced a subjective belief in the victim that he was armed with dangerous weapon, and that the victim’s belief was objectively reasonable under the circumstances. State v. Fortune, 608 So.2d 148 (La.1992).
|7The appellant argues that the evidence was insufficient on each count to prove that he led the victim to reasonably believe that he was armed with a dangerous weapon. '
The appellant notes that in Fortune, in which the offender met the victim with one hand under his shirt, said he had a gun, and demanded her jewelry, the reviewing court found that the offender was guilty of only simple robbery. However, a full reading of the case indicates that neither the victim nor her companion believed that the perpetrator was armed, that the victim stepped back rather than offering her jewelry, and that the perpetrator had to lunge forward and grab it.
The instant cases differ substantially from Fortune. In count one, Mr. Hayes testified that he believed the defendant had a gun because he kept his hand in his pocket. Although the victim testified that he was angry, he also believed that the defendant “meant business.” He opened the register and placed the money in a bag, as demanded by the defendant. He further testified that, when the defendant ordered him and another employee to walk towards the back of the store, he thought that “[they] were both dead.” He thought the defendant was going to take them into the freezer or just take them in the back and shoot them.
In count two, Ms. Fourcha initially stated that the defendant said he had a gun. On cross-examination, she admitted that he never said he had a gun. However, in the intervening testimony, Ms. Fourcha twice testified that the defendant told her “to make sure he did not have to use it.” Ms. Fourcha complied with the defendant’s demands by opening the cash register and giving the defendant a bag of money.
| sIn both cases, the testimony is sufficient to find that the defendant induced a *130 reasonable fear that he was armed. Both victims responded by immediately complying with the defendant’s demands and turning over the money in the cash register. This assignment is without merit.

ASSIGNMENT ONE

The appellant argues that the trial court erred in denying his motion to suppress the identification in count two as the circumstances indicated a likelihood that there was a misidentification. A defendant seeking to suppress an identification must show both that the identification itself was suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984). A photographic lineup may be deemed unduly suggestive if the pictures display the defendant so singularly that the attention of the witness is focused on the defendant. State v. Flank, 537 So.2d 236 (La.App. 4th Cir.1988). A trial court’s determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981).
The appellant argues that the identification in count two was unreliable because the perpetrator was clean-shaven, but the photographs in the lineup were of bearded individuals. The appellant further argues that the victim estimated the perpetrator’s height at 5'6" and his weight at 130 pounds, and the defendant was considerably larger than that. However, the defendant makes no showing that the photographic lineup with Ms. Fourcha was suggestive.
At the motion to suppress hearing, the trial court specifically noted that the individuals in the photographic lineup all looked the same, though they were all 1 ¡¡bearded. Because the pre-trial identification procedure was not unduly suggestive, the identification was admissible. The arguments raised by the appellant may then be considered as to the weight of the evidence, not its admissibility. Ms. Fourcha testified that the perpetrator was clean-shaven when he robbed her, but that she recognized his face through the beard because she was used to seeing her husband with several days’ growth. As to the disparity in Ms. Fourcha’s reported estimates and the defendant’s actual height and weight, this factor was brought to the attention of the jury. Ms. Fourcha also testified that the lighting was good, and that she had an excellent opportunity to view the perpetrator’s face. The jury could thus have reasonably found the identification was reliable, as the trial court correctly found it admissible. This assignment is without merit.

ASSIGNMENTS THREE, FIVE AND SIX

In assignment three, the appellant argues that the evidence linking him to the cocaine conviction used as a predicate in the multiple bill was insufficient. In assignment five, the appellant argues that his sentence to life imprisonment is unconstitutionally excessive. In assignment six, the appellant argues that trial counsel was ineffective for his failure to file a response to the multiple bill and a motion to reconsider the enhanced sentence.
Because the multiple adjudication and sentence must be vacated, these assignments are all moot. Nevertheless, we note that the fingerprint expert testified that the fingerprints on the card attached to the pen pack of the appellant’s cocaine conviction, the fingerprints attached to the bill of information from the predicate first degree robbery conviction, and the fingerprints taken of the appellant in court all matched. The exhibits in the record were sufficient to prove | inthat the appellant was convicted of the prior offenses. Assignment three, were it not moot, would be without merit.
As to the appellant’s claim that his sentence is unconstitutionally excessive, he notes that he “has never been convicted of *131 a crime which involved an actual dangerous weapon.”
The Habitual Offender Law, in pertinent part, provides:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In State v. Dorthey, 623 So.2d 1276 (La.1993), the court held that a downward departure was permissible when the mandatory minimum sentence on a multiple bill was constitutionally excessive. However, in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the court held that such a departure from the minimum sentence would be upheld only when a court could demonstrate that the defendant’s case and circumstances were exceptional.
Neither the court nor the appellant has demonstrated that this case is exceptional. Rather, the appellant’s criminal record, including convictions for two counts of first degree robbery in the instant case and ten counts of first degree robbery in one of the predicate cases, indicates that he is the type of repeat violent offender the legislature intended to remove permanently from the streets. Assignment five, were it not moot, would be without merit.
Lastly, because the evidence on the multiple bill was sufficient and the sentence was not excessive, counsel was not deficient for failure to properly object and preserve these issues for review. Assignment six, were it not moot, would be Inwithout merit.
Moreover, the error in the multiple bill of information, the failure of the State to specify which count or counts it sought to enhance, was raised on appeal and considered as an error patent on the face of the record. Accordingly, the appellant was not prejudiced by the failure of counsel to object prior to or at the multiple bill hearing.

CONCLUSION

The convictions of defendant, Robert Newman, are affirmed. The multiple adjudication and sentence are vacated and the case is remanded for further proceedings in accordance with the court’s opinion.

CONVICTIONS AFFIRMED; MULTIPLE BILL ADJUDICATION AND SENTENCE VACATED; CASE REMANDED.

. The prosecuting attorney erroneously stated that the appellant was convicted in 1992 of eleven counts of first degree robbery. The multiple bill exhibits indicate that the appellant pled guilty to ten counts of first degree robbery, and five counts were dismissed, in accordance with a plea bargain.