JjPLOTKIN, Judge.
Percy L. Hawthorne was convicted of (1) armed robbery, a violation of La. R.S. 14:64 and (2) attempted armed robbery, a violation of La. R.S. 14:27(64). On appeal, defendant asserts three assignments of error relating to his resentencing only.

PROCEDURAL AND FACTUAL HISTORY

Defendant was sentenced to serve 198 years as a second offender under La. R.S. 15:529.1 and La. R.S. 14:64 as to the armed robbery conviction, and to serve 49/6 years under La. R.S. 14:27(64) as to the attempted armed robbery conviction. The sentences were imposed to run consecutively, and each was imposed without benefit of parole, probation, or suspension of sentence. Defendant appealed. In an unpublished opinion, this court previously confirmed defendant’s convictions but vacated the sentences and remanded the case for resentencing, on the grounds that the trial court failed to vacate his initial sentence on count one before imposing the multiple bill sentence and sentenced him twice as to count two. State v. Hawthorne, 98-1944 (La.App. 4 Cir. 5/5/99), 738 So.2d 209, (unpublished).
The defect was cured when defendant was resentenced on May 25, 1999, to serve 198 years on count one and 49% years on count two; both sentences are | ¡imposed without benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 15:529.1. The sentences are also imposed to run consecutively to each other and to the life sentence he is serving on another offense. His motion for reconsideration of the resentencing was denied and his motion for an appeal was granted.
The facts of the case, as presented in the earlier opinion, are as follows:
At trial Kenneth Porter, the owner of an engineering company, testified that on New Year’s Eve 1994, he was driving to the Pelican Club Restaurant to meet friends. As he was getting off Earhart Boulevard to turn on to Claiborne Avenue, he stopped at a traffic light. Suddenly his van door was opened, and a man put a gun to his head. The gun was actually touching his forehead. Mr. Porter began to cry, and the man said, “Get the fuck out the van.” Mr. Porter stepped out of the van, and it began to roll because it was still in gear. The robber drove away in the van. The streets were very dark, but Mr. Porter had been able to see the man with the gun clearly because the light in his van illuminated the vehicle. Mr. Porter got a good look at the gunman’s face and noted that he had very unusual features. Mr. Porter noticed a light in a building nearby; it was a body shop, and two men were there. Mr. Porter testified that he was in a daze; he said he could not remember giving facts to the police, but the police officers went through his pockets and found friends’ names and telephones numbers. One of his friends came to pick him up and take him home.
The police found Mr. Porter’s van and the papers he had in the van were scattered over the seats, and a gift was missing. Porter’s keys were not in the van, but he kept an extra key in a magnet box hidden under the van. Porter retrieved the keys from the magnet box and drove his van home that night.
In January, Porter noticed a picture in the newspaper that he recognized immediately as the gunman who took his van. Porter testified that went to the police station the next day. Porter testified that he did not go right away because he “didn’t want to mess my day up”. Porter explained that the robbery was so traumatic he did not want to think about it. While at the police station, Porter was shown a photographic line-up, and he selected the picture of Hawthorne. Porter identified Hawthorne in court as the man who robbed him of his van at gunpoint.
At trial, Porter admitted to having two prior convictions, one from federal *926 court and one from state court. Porter explained that he owned a car rental franchise that he and his wife ran; when problems with credit cards developed, he took full responsibility, which resulted in a conviction in federal court. The state court conviction resulted from his plea of guilty to failure to return a rental car. Porter was sent |¡¡to a halfway house as part of his federal court sentence.
At trial, Ms Joanna M. Anderson testified that on January 8, 1995, she had spent three hours at the Mount Bethel Baptist Church near Dryades Street and Jackson Avenue. Anderson testified that she left the church to go to her home on the Westbank, and that she stopped at a light on the corner of Dryades Street and Jackson Avenue. Anderson testified that she became aware of someone approaching the driver’s side of her van. Anderson testified that she ignored the person, but she heard a tap on the window. Anderson testified that she turned toward the window and looked into the barrel of a gun. Anderson testified that the man shouted at her, “Bitch, open up the fucking car.” Anderson described the man as looking like Frankenstein. Anderson testified that the man threatened to “blow ... [her] fucking brains out.” Anderson testified that another young man appeared on the other side of her van. Anderson testified that the young man said, “Man, don’t kill her, the woman look like she just came from church.” The gunman then threatened to shoot the young man. Anderson testified that the young man hit the van and shouted to her “Get out of here, he have murdered before.” Anderson took the advice and drove home. Anderson testified that she was so upset she called her office at the Jefferson Parish Sheriffs Office instead of the police. She was instructed to call the NOPD.
Anderson testified that while she was watching the 10 p.m. news, she saw the defendant on television. Anderson testified that she called the police the next day, and an officer came to her office to show her a photographic line-up from which she selected Hawthorne’s picture. Anderson also identified Hawthorne in court as the man who tried to rob her at gunpoint.
At the trial, the testimony of Officer Gene Ballex was read to the jury; Officer Ballex could not be present at trial because he was injured on duty and is undergoing physical therapy.
At the trial, Hawthorne, the twenty-two year old defendant, testified. Hawthorne admitted two prior convictions for murder and also two prior convictions for possession of stolen property worth more than $500. However, he said that he had never seen either of the victims in this case before he was in court with them; he denied robbing Porter and attempting to rob Anderson.
State v. Hawthorne, 98-1944, pp. 2-4 (La.App. 4 Cir. 5/5/99), 738 So.2d 209.

DISCUSSION

Appellant argues three assignments of error. He contends that the trial court erred in imposing (1) both sentences under the multiple bill, (2) the sentence in count one without benefits, and (3) the sentences to run consecutively.
|4In his first argument, appellant claims that under La. R.S. 15:529.1, a defendant can be sentenced as a multiple offender on only one conviction when more than one is handed down on the same day under the same bill of information. Citing State ex rel. Alpine v. Butler, 549 So.2d 859 (La.1989), State v. Sherer, 411 So.2d 1050 (La.1982), and several cases from this circuit, the appellant maintains that he can be multiple billed on only one of his convictions because they were handed down on the same date.[1] However, in a *927 more recent Louisiana Supreme Court case, State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), where the defendant was convicted of three armed robberies arising out of the same criminal episode, the Supreme Court explained that the key issue is not whether the convictions occurred on the same date but whether the convictions arose out of the same criminal episode. Thus, Porter, who had prior felony convictions, could be multiple billed on only one of his armed robbery convictions; he could not be adjudicated a multiple offender on all three convictions because they arose from the same criminal episode.
Furthermore, in State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165, this Court presented a thorough clarification concerning when a defendant with prior convictions and multiple current offenses can be multiple billed on more than one conviction. The defendant ■ in Ward, who had a prior felony conviction, was convicted of three |Bpurse snatchings occurring on different dates and with different victims. This Court concluded that the trial court properly sentenced the defendant as a multiple offender on all three purse snatching convictions.
In the case at bar, appellant was convicted of two distinct criminal events — an armed robbery of Kenneth Porter on December 31, 1994, and an attempted armed robbery of Joanna M. Anderson on January 8, 1995 — even though the two convictions occurred on the same date. Therefore, the trial court properly sentenced him as a habitual offender on both counts. State ex rel. Porter v. Butler, supra; Ward, 94-0490 at pp. 12-14, 670 So.2d at 568-69.
This assignment is without merit.
The appellant next argues that the trial court erred in restricting the benefits of parole, probation, or suspension of sentence when resentencing him on count one because his original sentence was imposed without the restrictions. The appellant is mistaken. According to the minute entry of the sentencing on October 24,1997, both sentences were imposed without benefit of parole, probation, or suspension of sentence. Furthermore, the Commitment Form, also dated October 24, 1997, states that both sentences are without benefits.
There is no merit in this assignment.
In his third assignment of error, the appellant argues that his consecutive sentences are excessive.
The law concerning consecutive sentences, La. C.Cr.P. art. 883, provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
|,In State v. McCray, 28,531 (La.App. 2 Cir. 8/21/96), 679 So.2d 543, the Second Circuit stated:
*928 It is within a trial court s discretion, however, to order sentences to run consecutively rather than concurrently. State v. Coates, 27,287 (La.App. 2 Cir. 9/27/95), 661 So.2d 571, writ denied [95-2613 (La.2/28/96), 668 So.2d 365]; State v. George, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, writ denied [95-1151 (La.9/29/95), 660 So.2d 855]. Moreover, where the convictions stem from separate incidents involving different victims and occur over a lengthy period of time, the resulting consecutive penalties will not be found to be an abuse of that discretion.
Id. at p. 3, 679 So.2d at 545.
Here, the trial court ordered that the sentence imposed for the 1994 crime committed against Kenneth Porter is to be served consecutively to the crime committed against Joanna Anderson. The crimes consisted of two distinct offenses; they affected different victims at different times and at different locations. Both victims testified that they were traumatized by the events. Moreover, the appellant’s criminal history indicates he is a risk to public safety. He has been convicted of theft twice and murder twice, in addition to the current offenses. In light of these factors, the trial court did not abuse its discretion in ordering that the Sentences be served consecutively. State v. Johnson, 97-867 (La.App. 5 Cir. 4/15/98), 711 So.2d 848, writ denied, 98-1293 (La.10/9/98), 726 So.2d 20; State v. Barnett, 96-2050 (La.App. 1 Cir. 9/23/97), 700 So.2d 1005.
There is no merit in this assignment.

CONCLUSION

Accordingly, for reasons cited above, we affirm appellant’s sentences.

AFFIRMED.

. The appellant cites State v. Hatcher, 568 So.2d 578 (La.App. 4 Cir.1990), writ denied, *927 572 So.2d 87 (La.1991); State v. Porter, 533 So.2d 112 (La.App. 4 Cir.1988); State v. Denis, 524 So.2d 114 (La.App. 4 Cir.1988), writ denied, State ex. rel. Denis v. State, 530 So.2d 564 (La.1988); State v. Williams, 522 So.2d 1171 (La.App. 4 Cir.1988); State v. Williams, 514 So.2d 573 (La.App. 4 Cir.1987); and State v. Rattler, 503 So.2d 168 (La.App. 4 Cir.1987) writs denied, 507 So.2d 224 (La.1987). State ex. rel. Porter v. Butler, 573 So.2d 1106 (La.1991), "implicitly overruled” State v. Hatcher and State v. Denis, according to State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, 568, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165. The other cases cited by defendant refer to State v. Sherer, 411 So.2d 1050 (La.1982), for the one day/ one conviction rule which was clarified in State ex. rel. Porter v. Butler, 573 So.2d at 1109, and in State v. Ward, 94-0490, p. 14 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, 569, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165, to "one event/ one day/ one conviction”; thus, the cases cited do not provide authority for the instant case.