| PATRICIA RIVET MURRAY, Judge.
The sole issue presented is whether the trial court erred in applying the habitual offender law to enhance all four of Ortiz Jackson’s sentences arising from a single criminal episode. Answering that question in the affirmative, we vacate those sentences and remand for resentencing.

STATEMENT OF THE CASE

On February 28, 2000, Mr. Jackson was charged by bill of information with attempted first degree murder (La. R.S. 14:27, 14:30), armed robbery (La. R.S. 14:64), aggravated burglary (La. R.S. 14:60), and false imprisonment while armed with a dangerous weapon (La. R.S. 14:46.1).[1] On March 13, 2000, Mr. Jackson was arraigned and pleaded not guilty to all charges. After a preliminary hearing on June 14, 2000, the trial court found probable cause and denied his various motions |gto suppress. On October 3, 2000, the trial court dismissed the armed robbery charge.
Following a three-day trial in October 2000, the jury found Mr. Jackson guilty of four offenses, and in February 2001, the trial court imposed the following sentences: (1) aggravated battery — ten years at hard labor, (2) attempted aggravated burglary — fifteen years, (3) attempted unauthorized entry of an inhabited dwelling-three years, and (4) false imprisonment while armed with a dangerous weapon — ten years. The state then filed a multiple offender bill.
Following a multiple bill hearing in November 2001, the trial court found Mr. Jackson to be a second time multiple offender. On that basis, the trial court vacated all four original sentences and im *1163 posed the following enhanced sentences: (1) aggravated battery — fifteen years at hard labor, (2) attempted aggravated burglary — twenty years, (3) attempted unauthorized entry of an inhabited dwelling— five years, and (4) false imprisonment while armed with a dangerous weapon— fifteen years. The trial court further ordered the aggravated battery sentence to run consecutively to the other three sentences and the other three sentences to run concurrently to each other. The trial court denied Mr. Jackson’s motion to reconsider sentence and granted his motion for appeal.

STATEMENT OF THE FACTS

The facts of this case are not at issue. As we summarized in our earlier decision affirming one of the co-defendant’s conviction and sentence, the facts are as follows:
On the evening of November 4, 1999, Derwin Anear, his girlfriend, Yvonne Barthelemy and Latisha Anear, his niece, were asleep in his trailer. Anear awoke when he heard someone knocking at the door. When he opened the door, three men attacked him. Anear told the | amen that his girlfriend and niece were in the trailer and to leave them alone. At that point, Latisha woke up and heard Anear arguing with someone outside. Latisha ran into the bedroom and woke up Yvonne. One of the men, later identified as Henry Coleman, entered the trailer armed with a gun and told the women to come out into the living area. Latisha told Coleman that Yvonne was pregnant, and he allowed them to sit on the sofa. Coleman asked Yvonne “where were the drugs and money?” She stated that she did not know anything about drugs but that they did have some money that was in the bedroom. She showed Coleman where the money had been hidden. Coleman took the money, approximately six thousand dollars, and walked outside. He returned inside the trailer; then he heard someone say that the police were coming, and all the men left. Shortly thereafter, she heard a gunshot towards the highway.
At approximately the same time, Rolen-da Merrick, Anear’s sister who lived next door, heard Anear talking to someone. She heard someone say, “Where it’s at?” She went outside and asked the man, later identified as Ortiz Jackson, what he wanted with her brother. Jackson told her to shut up and stay there. Jackson had a knife at Ancar’s throat. [She testified that, while wielding that knife, Jackson told her to get into her trailer and to stay there.] A few minutes later, another man, later identified as Coleman, asked her if anyone was in the trailer and if she had a telephone. She stated that she did not have a phone and that her children and grandchild were in the trailer. Anear and Jackson began fighting outside when Coleman went inside Ancar’s trailer. He was able to break away from Jackson and ran towards the highway. He turned and saw the three men running from the trailer and entering a blue Cadillac. At that point, he observed Kenyon Williams take off the mask he had been wearing. The defendants saw Anear near the highway and fired at him. Anear ran back towards the trailers. He did not realize he had been shot until he got back to his trailer. Rolenda took Anear to the hospital.
When the police arrived on the scene, Yvonne gave the officers a statement and then proceeded to the hospital. On the way to the hospital, she was stopped and asked if she could identify the perpetrators in a one on one identification. She identified Coleman at the scene. Letisha identified Coleman in a *1164 photographic lineup, and Anear identified Williams, Coleman and Jackson in photographic lineups. Anear stated that he had seventy-five hundred dollars in his trailer that was to be used to pay off his vehicle. He testified that his mother loaned some of the money to him and the rest was received as a partial settlement of a lawsuit. He admitted to several misdemeanor and traffic convictions as well as two convictions for possession of cocaine.
Detective Jessie Ledet, the officer in charge of the investigation, arrived on the scene at approximately 11:30 p.m. When he arrived on [4the scene, he learned that the victim’s sister had taken the victim to the hospital. He took photographs of the scene and obtained statements from several witnesses. He conducted photographic lineups with the witnesses who identified Coleman, Jackson and Williams.
Officer William Black, Jr. was on patrol when he heard the description of the vehicle used during the incident. He observed a vehicle fitting the description in Ironton. He stopped the vehicle one mile north of Ironton, near the BP plant. Other officers assisted in stopping the vehicle. The three subjects in the vehicle were ordered out of the vehicle and patted down. Williams was driving the vehicle, Coleman was the passenger in the front seat, and Jackson was the passenger in the rear seat. No weapons were found in the vehicle. Each subject was placed in a separate police vehicle and advised of his rights. While they were on the scene, Lt. Bowers arrived with Yvonne Barthelemy. After she identified the subjects, they were transported to jail.
State v. Williams, 2001-1464, pp. 2-4 (La. App. 4 Cir. 5/1/01), 818 So.2d 274, 275-276.

PATENT ERROR

A review of the record for patent errors reveals none.

DISCUSSION

Mr. Jackson’s sole assignment of error is that the trial court erred in sentencing him as a second felony offender on each of the four counts. Because all four counts stemmed from a single criminal episode and were charged in a single bill of information, he argues that the sentences should be vacated and the matter remanded for resentencing. We agree.
In State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), the Louisiana Supreme Court held that “[mjultiple convictions obtained the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing.” 573 So.2d at 1109. In Porter, the defendant was convicted of three armed robberies |Rarising out of a single criminal episode. The Court thus held that it was error to adjudicate the defendant as a multiple offender and sentence him as such on all three convictions; rather, the Court held that he could be sentenced as a habitual offender on only one conviction. Id.
Following Porter, this court in State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, extensively outlined the jurisprudential transformation of the “one day, one conviction” rule into an “one event, one day, one conviction” rule. We explained that under Porter, “only multiple convictions arising out of the same criminal act or episode and obtained on the same date will be considered as a single conviction for purposes of the habitual offender law.” 94-0490 at pp. 12, 670 So.2d at 568 (emphasis in original). We further explained that under Porter “the new general rule is that the trial court can multiple *1165 bill convictions rendered on the same day. The new limited exclusion is that the ‘one day, one conviction’ rule only applies in ... two cases.” Id. The one applicable here is as follows:
When there is a prior final felony conviction before the case currently at issue, multiple counts arising out of a single criminal act or episode or incident or event cannot each be enhanced under the multiple offender statute. If, for example, Mr. X had a prior final felony conviction from 1994 and then committed the armed robberies in 1996 against the A couple [robbing Mr. and Mrs. A, who are walking together both at the same time]. Then the trial court could use the 1994 conviction as the predicate for only one of the 1996 offenses, because both of the 1996 offenses arise out of the same criminal act or episode or incident or event. If, however, Mr. X had a prior final felony conviction in 1994 and he committed the armed robberies against Mr. and Mrs. A on January 1 at 2:01 p.m. ... and then Mr. X traveled two blocks over where he robbed Mr. B at gunpoint on January 1 at 2:45 p.m., then the trial court could use the 1994 felony as the predicate conviction for only one of the A robberies as discussed above, but could also use the 1994 felony as the predicate for the B robbery, because the B robbery arises out of a different criminal act or episode or incident or event than the A robberies. Thus the “one day, one conviction” rule is misnamed and should be known as the “one event, one day, one conviction” rule.
I fi94-0490 at pp. 13-14, 670 So.2d at 569.
Applying those principles to the instant case, we conclude that Mr. Jackson’s four convictions arise out of a single criminal episode given that the offenses occurred simultaneously; occurred basically at a single location, albeit involving two separate trailers; and involved a single, albeit extended, family. Cf. State v. Kennerson, 96-1518, pp. 18-20 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1379-80 (finding defendant’s burglary of one victim’s truck was a separate “criminal episode” completed before defendant drove to another victim’s home and participated in a separate “criminal episode”).
Given Mr. Jackson’s four convictions all arise out of a single criminal episode, it follows, under Porter, that the trial court erred in adjudicating and sentencing him as a multiple offender on all four convictions. The single criminal episode for which he was convicted should be treated as a single conviction for purposes of applying the habitual offender law in sentencing. Hence, he should be sentenced as a habitual offender on only one conviction.

DECREE

For the foregoing reasons, the adjudications and sentences of Ortiz Jackson under the habitual offender statute are set aside, and the case is remanded to the district court for resentencing on all four convictions, with adjudication and sentencing as a habitual offender on only one of the convictions.
VACATED AND REMANDED.

. Co-defendants, Kenyon Williams and Henry Coleman, were charged in the bill of information with the same offenses. All three defendants were tried together. The jury convicted Mr. Coleman of one count of aggravated battery, aggravated burglary, unauthorized entry into an inhabited dwelling, and two counts of false imprisonment while armed with a dangerous weapon. The jury convicted Mr. Wil-iams of one count of aggravated battery and two counts of unauthorized entry of an inhabited dwelling. Mr. Coleman's appeal is presently pending in this court. We affirmed Mr. Williams’ convictions and sentences. State v. Williams, 2001-1464 (La.App. 4 Cir. 5/1/01), 818 So.2d 274.